By the Court. Bosworth, J.—
At the date and upon the execution of the agreement of the 24th of March,' 1855, between Howard and Coe, independent of the question of the extent to, and the manner in which the rights and liabilities of either of the parties may have been affected by any parol promise of J. Naylor, to pay the mortgage held by Howard, and the mortgage held by the plaintiff, the rights and liabilities of the parties, according to the facts, as found, were as follows:—
Joseph Naylor was the owner of the leases, furniture and fixtures of the Howard House, subject to a mortgage, executed by the plaintiff and Burroughs to Howard, on the 27th of September, 1852. This was the first lien. Such ownership was also subject to a mortgage, covering the same property as the first, and some chattels, in addition, executed by H. Bradley and Burroughs, to the plaintiff, on the 22d of September, 1853. This was a second lien. The other mortgages and liens, to which such ownership was subject, not being material to the decision of any question presented by this appeal, need not be mentioned.
Under the agreement between Howard and Coe, of the 24th of March, 1855, the Howard mortgage was a valid and available security, in the hands of Coe, for the amount of his advances, being $14,254.42.
Although it is not so stated, as a part of the facts found by the Court, yet the testimony is uncontradicted, that the plaintiff assented to the execution, by Howard to Coe, of the agreement of the 24th of March, 1855.
Under such circumstances, Coe had the right, as against the *220 plaintiff, to have the mortgaged property sold, and the proceeds applied to pay, first, the amount due to Howard on the mortgage, which he had sold to Coe. Any Bona fide purchaser of the property, at a regular and legal sale of it, under the Howard mortgage, would acquire a valid title to it, as against the plaintiff. Any mortgagee of such property, under a mortgage, executed by such a purchaser, would acquire a specific lien upon it, unaffected by any claim of the plaintiff arising upon the mortgage executed to him, by Bradley and Burroughs.
As against Coe, or any person succeeding to his rights, or as against any bona fide purchaser, at a regular sale, under the Howard mortgage, the plaintiff, inasmuch as he assented to the agreement between Howard and Coe, such assent having been required by Howard, before he would enter into the agreement, is not at liberty to object, that the sum which Coe agreed to pay, and did pay to Howard, for the mortgage, was not owing upon and secured by it.
The Court, at Special Term, found, that “the conduct of J. Naylor, in effecting the arrangement between Howard and Coe, and in the sale and other proceedings under said Howard mortgage, was fraudulent against the plaintiff, and a breach of faith towards him, and amounted virtually to a payment by said Naylor, out of his own funds, of the Howard mortgage, which was thus satisfied and extinguished.”
This finding would seem to have been stated, rather as a conclusion of law, than one of fact. It is not found, as a fact, that these proceedings were designed and prosecuted with an intent to defraud the plaintiff of the lien of his mortgage.
The evidence of Mr. Rodman shows, that he had agreed, as the authorized attorney of the plaintiff, that the property should be sold under the two mortgages, and that it was unnecessary that the furniture should be sold in parcels. It is true, that this agreement was part of an arrangement claimed to have been made between Rodman and J. Naylor, by which the latter was to secure the payment of the mortgage held by the plaintiff, and which, it is claimed, J. Naylor had previously agreed to pay. One of the papers, which was drawn for the purpose of effecting that arrangement, was signed by J. Naylor, and, for aught that is proved or has been found, it may fairly be said, he'expected and believed *221 he should induce the other persons to execute them, whose execution of them, or of either of them, would have been satisfactory to the plaintiff.
The fact, therefore, that the furniture was sold in lots, although, under all the circumstances, it may operate as a fraud upon the plaintiff, if held to be an absolute foreclosure of the lien of his mortgage, as between him and the two Naylors, was not deemed by the Court at Special Term, either of itself, or with the other evidence, to justify the conclusion of an actual intent to thereby defraud the plaintiff. At all events, no such conclusion is stated, as a fact found. '
Whether the verbal promise, made by J. Naylor to the plaintiff, and the sale, considering the circumstances under which it was made, and the fact, that J. Naylor was the highest bidder, and the purchaser at such sale, not only extinguished the Howard mortgage, both at law and in equity, as against the plaintiff, but left the mortgage, held by him operative as a valid lien upon the property, and made J. Naylor personally liable to pay to the plaintiff the mortgage held by the latter, are the important questions to be determined. We will, first, consider the question of J. Naylor’s personal liability.
The Court, at Special Term, found, as facts, that prior to, and in view of the sale by Taylor, the defendant Joseph Naylor, in consideration of their forbearing payment of their mortgages, verbally agreed with Howard, and with the plaintiff, that if he purchased at such sale, to assume and pay to Howard the rent due, and to become due, to him, and to the plaintiff the amount due on his mortgage, upon his deducting $1500 from the amount then due upon it, which the plaintiff then agreed to do.
That just before the arrangement between Howard and Coe, of the 24th of March, 1855, J. Naylor, in consideration that the plaintiff would forbear to enforce his mortgage, again verbally promised and undertook to pay the amount of said mortgage, less the deduction of $1500, previously agreed upon, and plaintiff did so forbear.
On these facts the,.. Court concluded, as matter of law, that J. Naylor was personally iiable to pay the plaintiff the amount due on the mortgage held by,the latter, less the sum of $1500, and ordered a judgment in favor-of the plaintiff, against J. Naylor, for *222 any deficiency in the proceeds of the mortgaged property to satisfy that much of the mortgage debt.
We have no doubt, that a clear and express agreement of J.
' Naylor, as owner of the property subject to the mortgage, to pay the amount due to the plaintiff, or a part of that amount, in consideration of an equally distinct promise of the plaintiff to forbear generally, coupled with actual forbearance, or to forbear for a definite period, to interfere with the property by a foreclosure of the mortgage, would be a valid contract, unless it is essential to its validity that it should be in writing, and that the writing express such consideration.
The damage to the plaintiff, from delaying to enforce his securities, and by abating a part of his claim, in consequence of such an agreement, or the benefit to Joseph Naylor, from being permitted, in consequence of such an agreement, to retain the possession and use of the property, and make such profitable disposition of it as opportunities might offer, would be a sufficient consideration for such an agreement.
The evidence on this subject is somewhat loose and indeterminate. Mr. Rodman, who negotiated on the part of the- plaintiff with J. Naylor, says, that a short time prior to the sale by Taylor, “I agreed- with him, (J. Naylor,) on Doolittle’s behalf, to defer proceeding upon Doolittle’s chattel mortgage, and he said he would pay Doolittle the amount due on that mortgage, less $1500.”.....“ and he would buy the property at the sale which was then contemplated.”.....“ I told Naylor I wanted some security for his performance of that agreement.”.....“Naylor assured me he would do what he had agreed to do, and he was able to do it." That the plaintiff should be paid, was re-affirmed on the day of the sale.-
When the agreement between Howard and Coe was ready to be executed, Rodman’s assent to it, as agent of Doolittle, was required. J. Naylor assured him, that he would carry out his arrangements with Rodman, and that Doolittle should have his money, or words to that effect. Rodman stated, that he should rely on these assurances, and gave his assent, and advised the plaintiff of it.
Matters remained in this position, as between the plaintiff and J. Naylor, until the 11th of April, on which day another inter *223 view took place between J. Naylor and Bodman. From that time there were negotiations between them, for a short period, with a view to put their agreement or understanding in a precise and definite form, or to come to some definite and satisfactory arrangement. The written agreements which were drawn to effect that object, the form and terms of which were assented to, and one of which was executed by J. Naylor, fixed the first of May, 1855, as the day on which the plaintiff should be paid, either in cash, or by endorsed notes.
By each of these two instruments, Doolittle was to sell, and Joseph Naylor was to purchase the note made by Henry Bradley, and the chattel mortgage which the plaintiff held as security for the payment of the note.
The agreement first drawn was not executed by any one. That secondly drawn was executed by Joseph Naylor and John A. Bidwell, but because it was not executed by Mr. Coe, the plaintiff declined to accept it.
The plaintiff had then a suit pending against Joseph Naylor, to restrain him from removing the furniture from the Irving House, and as early as the 17th of April, 1855, had obtained a temporary injunction, and had given notice of moving for a permanent injunction.
That motion was adjourned from day to day, for a few days, while the plaintiff and J. Naylor were negotiating, with a view to come to some definite result, and when the second written agreement was rejected, the plaintiff made his motion for a permanent injunction, and the motion was denied and the injunction dissolved as early as the 30th of April, 1855. That was the end of the negotiation.
The agreement by Naylor, to pay the plaintiff, is stated in the complaint in these words: “ And this plaintiff, on information and belief, avers that it was expressly understood and agreed, between this plaintiff, through his agent, and said Taylor, assignee as aforesaid, and said Naylor and Howard prior to said sale,” (by Taylor,) “ that said Naylor should pay the said $2700 in cash prior to said sale, that he should buy the furniture and fixtures at the sale, and that when he had done, so, he should pay the rent, then in arrear, and to become due, to the said Howard, and pay the amount due to the plaintiff, with a deduction of $1500, *224 on or before the first day of May then next; and on these conditions, relying on the said Naylor’s assurances of his intention and ability to do so, the plaintiff assented to said sale and forbore to enforce his said mortgage.”
It is not expressly averred, in this statement of the alleged contract, that Doolittle agreed to forbear, either generally and indefinitely, to enforce his mortgage, or until the first of May then next, or at all.
In construing the finding of the Court in respect to the agreement, in the light furnished by the pleadings and the evidence, we must understand it to be, that, prior to the sale by Taylor as assignee, Joseph Naylor verbally promised the plaintiff, in consideration of “the plaintiff forbearing payment of his mortgage,” and “verbally agreed with the plaintiff,-to assume and pay the amount of plaintiff’s mortgage, upon his deducting the sum of $1500 from what was then due upon it, which plaintiff agreed to do.” The Court does not state, as a fact found, that the plaintiff did agree to forbear. And the subsequently stated fact, that just before the arrangement between Coe and Howard was concluded, Joseph Naylor, in consideration that plaintiff would forbear to enforce his mortgage, again verbally promised and undertook to pay the amount of said mortgage, less the deduction of $1500, previously agreed upon, and plaintiff did so forbear,” imports that the agreement on the part of Naylor was not only verbal, but conditional. He promised to pay if the plaintiff would forbear. How long he must forbear to make it obligatory upon J. Naylor to pay, is not found by the Court nor alleged in the pleadings. That the plaintiff absolutely agreed to forbear, is not directly averred, nor expressly found. But, notwithstanding the want of precision in the language of the complaint, and in that employed to state the facts found by the Court, it may fairly be held, and be understood as intending to mean, that J. Naylor did agree to pay the mortgage held by the plaintiff, less $1500, and the plaintiff agreed to deduct that sum and give forbearance, as to the payment of the residue, and the first of May thereafter was the time to which forbearance was to be extended, and payment made, and that the agreement of the one party, was the consideration of that of the other.
But assuming it to be sufficiently proved and distinctly alleged *225 that J. Naylor agreed to pay to the plaintiff the amount of the debt owing to him by Bradley, there is then presented the serious difficulty, that it was an agreement with Doolittle to pay, to him, a debt which Henry Bradley was owing to him.
It was, therefore, an agreement, not in writing, to pay the debt of a third person. It was not an agreement with the debtor, upon the receipt or purchase of something valuable from him, to pay, as its agreed price, to his creditor, the debt owing to the latter by such debtor. Such a transaction would, in equity, have made J. Naylor, as between himself and such debtor, the principal, and such debtor his surety, and such a promise could be enforced by action at the suit of the creditor of such debtor. (Trotter v. Hughes, 2 Kern. 74; Halsey v. Reed, 9 Paige, 446.)
Such a promise, if made, to Taylor, the general assignee, as he was not personally liable to pay the debt to the plaintiff, would confer no rights upon the plaintiff, to resort to Joseph Naylor. (Trotter v. Hughes, supra ; King v. Whitely, 10 Paige, 465.)
But the alleged verbal promise is found, as a fact, to have been made to the plaintiff, the creditor. He still retained the liability of Henry Bradley, his debtor. The promise was to pay a debt owing by Bradley, and to pay it to the plaintiff, to whom Bradley owed it, and the promise was made to the plaintiff, and Bradley was not a party to the transaction.
It was, therefore, a promise .to the plaintiff, to be answerable to him for the debt of Bradley.
If the promise had been cotemporaneous with the creation by Bradley of the debt to the plaintiff, and of the execution of the mortgage, although it might have been made upon a consideration sufficient to uphold it, it would be void, because the promise was not in writing, and in a writing expressing the consideration. (Brewster v. Silence, 4 Seld. 207; Hall v. Farmer, 5 Denio, 484.)
That the promise was made long after the debt of Bradley was contracted, does not make a stronger case for the plaintiff. The promise is collateral to the principal debt, and payment of that, by the principal debtor, would put an end to all claims, of the plaintiff against Joseph Naylor, based upon such promise.
In Smith v. Ives, (15 Wend. 182,) it was held, that forbearance to sue was not a new consideration, taking the case out of the statute. (Watson v. Randall, 20 Wend. 201.)
*226 It needs no citation of authorities to show, that all collateral promises, for the debt of another, must be in writing, expressing the consideration.
In the present case, it may be said that the consideration consisted, not only of the damage to the plaintiff from forbearing to foreclose the mortgage, but of the benefit resulting to the defendant from the use of the mortgaged property, in the mean time.
However ample may have been the consideration, the difficulty remains, that the contract, or promise, was, to pay the debt of a third person, and was collateral to it; and such promise was not evidenced by a writing subscribed by the defendant, and expressing the consideration. That objection, we think, is fatal to the plaintiff’s right to recover a personal judgment against Joseph Naylor, merely by force of such promise. (Larson & Sanders v. Wyman, 14 Wend. 246; Watson v. Randall, supra.)
The remaining question relates to the effect to be given to the purchase made by Joseph Naylor, at the mortgage sale, as between him and the plaintiff, and as between the plaintiff and Peter Naylor.
The Court, at Special Term, found that, prior to the sale by Taylor, the assignee, Joseph Naylor verbally agreed, With said Howard and the plaintiff, that if J. Naylor purchased, at such sale, he would assume, and pay to Howard, the rent due, and to become due, to him, in pursuance of the terms of his mortgage, and also verbally agreed, with the plaintiff, to assume and pay the amount of the plaintiff’s mortgage, upon his deducting the sum of $1500 from its amount, which the plaintiff agreed to do. This promise of J. Naylor was based upon the promise of the plaintiff to so deduct, and also to forbear payment of his mortgage.
We have concluded, as already stated, that these facts, as found, are sufficiently upheld by the evidence, to preclude us from interfering with them.
And, although we have, also, concluded that no action will lie on such verbal promise, in favor of the plaintiff, against Joseph Naylor, and that the former cannot recover a personal judgment, against the latter, for the debt secured by such mortgage, merely by force of such promise, yet it does not follow that such fact, in connection with the other facts found, may not require us to hold, that the Howard mortgage, as between the plaintiff and Joseph Naylor, has been paid and extinguished.
*227 It may, on a given state of facts, be justly held, that such mortgage is extinguished, as between the plaintiff and Joseph Naylor; and that as between J. Naylor and any mortgagee subsequent to the plaintiff, J. Naylor has succeeded to, and yet retains all the rights of Howard, as first mortgagee. (Ballard v. Leach, 1 Williams, Vt. 491.)
On the facts, as found, it must be taken to be true, that the plaintiff forebore, to enforce his mortgage by selling the mortgaged property, from the 10th of February, 1855, relying upon the promise of J. Naylor to extinguish the prior encumbrance of the Howard mortgage, and to, also, pay the mortgage held by the plaintiff. Rent to Howard continued to accrue, at the rate of $2604.16, monthly, and to that extent, to depreciate the value of the plaintiff’s mortgage security. The mortgaged property was being daily much deteriorated in value, by J. Naylor’s use of it, and the value of its use, in the mean time, J. Naylor was permitted to realize and enjoy, in consequence of the reliance placed upon his promise to pay both mortgages.
Although it be true, that when one, who has become owner of the equity of redemption, subsequently pays off a mortgage upon the property, a court of equity will sometimes treat the incumbrance as being kept alive, and the person who has so paid it, as succeeding to the rights of such mortgagee, yet it will only do so when that course will uphold an innocent purpose of the person so paying, and be injurious to no one.
We are of the opinion, that the acts of J. Naylor, in procuring, the assignment of the Howard mortgage to Coe, and in subsequently selling the property, under the mortgage, and in purchasing it at such sale, amounted, in effect, as between him and the plaintiff, to an actual payment and extinguishment of that mortgage.
Howard was pressing for his money, and about to foreclose his mortgage; J. Naylor wished to effect some arrangement, by which Howard might be paid presently, while he, at the same time, could obtain further forbearance.
He found, in Mr. Coe, a friend, who would advance the money, on an assignment of the security held by Howard, and J. Naylor’s promise, to make good any deficiency. The advance by Coe was, . as between himself and J. Naylor, virtually, a loan to the latter.
*228 But Howard would not assign his mortgage to Coe, without the consent of the plaintiff was first obtained. And that was only obtained upon the reassurance, by J. Naylor, that he would pay the mortgage held by the plaintiff, less $1500; and the confidence he created, that he would obtain, presently, for the plaintiff, satisfactory security, that such payment should be made on the first of May thereafter.
Under such circumstances, we think it was properly found, that this transaction, as between the plaintiff and J. Naylor, amounted to an actual payment and satisfaction of the Howard mortgage. ' Assuming him to have been honest, and acting in good faith towards the plaintiff, in making the promises and giving the assurance, by which he procured the plaintiff’s forbearance and agreement, to deduct $1500 from his debt, and by which he also obtained the plaintiff’s consent to Howard’s assignment of his mortgage to Coe, we must regard these acts as done in the execution of the agreement between himself and the plaintiff, and not as having been done with a view to mislead and injure him.
The sale, under the mortgage, after it was assigned to Coe, may, without imputing any bad faith, be treated as a clear indication of an intent of J. Naylor to keep that incumbrance alive, as between himself and any subsequent mortgagees, as to whom he owed no duty to pay or extinguish it.
We conclude, therefore, that the rights óf J. Naylor are no stronger than if he had, without any assignment of the mortgage to Coe, paid it in full to Howard, and taken an assignment of if to himself.
If he had done the latter, then, as between himself and the plaintiff, such payment, under the facts and circumstances proved in this case, would have operated as a satisfaction of the mortgage, although, as between J. Naylor and mortgagees, subsequent to the plaintiff, it would not have that effect.
But unless it was held, as between J. Naylor and the plaintiff, to operate as an absolute payment and extinguishment of the mortgage, and if it should be treated in equity as a subsisting incumbrance, the result of keeping it alive would be, to defraud the plaintiff, and thereby enable J. Naylor to give effect to an unjust and dishonest purpose.
*229 We understand the rule to be, that, under such circumstances, it will be treated as paid and extinguished, when that course is required to best subserve the purposes of justice.
At all events, the purpose to be subserved must be an innocent purpose, and injurious to no one. (Ballard v. Leach, 1 Williams, 491; Starr v. Ellis, 6 J. Ch. R. 393.)
The mortgage to Howard having been, in fact, paid by J. Haylor, by the means before stated, and having thereby, as between him and the plaintiff, become actually extinguished, the plaintiff’s mortgage, thereupon, became a first lien upon the property ; and being a valid and legal lien, the mortgage subsequently executed to P. Haylor was subject to it, and the latter acquired no rights, except as a mortgagee, having a lien subsequent to that of the plaintiff.
The plaintiff’s debt, to the amount established by the judgment appealed from, and the costs included in such judgment, with his costs of the appeals, should be paid out of the proceeds of the property covered by the Howard mortgage, if they are sufficient for that purpose; and if not sufficient, any property covered by that mortgage, and not sold, being in the hands of either Joseph or Peter Haylor, should be applied to that object, so far as it may be necessary to effect full payment. Any proceeds or property included in the mortgage to P. Haylor, not required to satisfy the plaintiff’s debt and costs, as aforesaid, P. Haylor may rightfully retain.
Should the whole property and proceeds, properly applicable to that purpose, be insufficient to pay the plaintiff’s debt and costs in full, there can be no judgment against J. Haylor for the deficiency. The judgment must be modified, to conform to these views.
Ordered accordingly.