By the Court—Bosworth, Ch. J.
The firm of D. Burgess & Company owed the plaintiff the amount found at Special Term to be due to him.
The plaintiff had a right to proceed against the defendant, Storrs, at law, as the surviving member of that firm, to recover from him the sum due. He also had the equitable right, Storrs having sold his interest to Burgess on his agreement to indemnify Storrs against all debts of the firm, to be paid by Paine, as administrator, pari passu; with other creditors, out of the copartnership assets, the firm being insolvent.
If both causes of action could not be united in one suit against the will of the defendants, it is enough to say that this defect appeared on the face of the complaint, and if the defendants wished to object to it, they should have demurred to the complaint. (Code, § 144, sub. 5, and §§ 147, 148.)
The plaintiff has done nothing to affect his legal or equitable rights, unless the agreement of the 18th of June, 1856, to which he is a party, in connection with the other agreements of that date, and that of the 16th of that month, work that result.
The two contracts, one of June 7,1854, and the other of November 6, 1855, between David B. Tower of one part, and D. Burgess & Company of the other, and which had been assigned by the latter to the plaintiff as security for the payment of the *610 money due from them to him, could not be made productive of results which would pay any part of the debt due to the plaintiff, or bring money into the hands of the Administrator of Burgess, unless the latter could sell them at a premium, or they could be executed in behalf of the estate of D. Burgess in such wise as to produce profits. That estate was insolvent, and Storrs had ceased to have any title to the contracts, and the firm of D. Burgess & Company had been dissolved by the death of D. Burgess.
The Court found at Special Term, that the arrangement effected by the several agreements of the 16th and 18th of June, 1856, was made “by and with the consent of all the said parties, and which arrangement was thought by the said parties, at that time, to be and was for the undoubted benefit of all interested.”
By the agreement of June 16, 1856, Paine, as Administrator of Burgess, assigned to D. B. Tower and C. Walker, all of Paine’s interest in the two contracts of June 7, 1854, and November 6, 1855, and Tower released D. Burgess & Company, and Paine as Administrator of Burgess, from all claims and demands under or by reason of said contracts; and Tower and Walker covenanted to pay to the plaintiff the amount due to him from D. Burgess & Company, viz.: $14,043 with interest thereon from the 14th of June, 1856.
Thenceforth, neither Storrs nor Paine, as Administrator of Burgess, could do anything under those contracts which D. Burgess & Company had originally agreed to do, and the plaintiff could not in any event find any indemnity in the performance or execution by either of them, of those contracts on behalf of D. Burgess & Company.
Tower and Walker by contract dated the 18th of June, 1856, assigned their interest to Sanborn, Carter & Bazin, and the latter agreed to pay to the plaintiff certain sums on account of the debt due to him, but not, unconditionally, to pay him in full.
The agreement of the 18th of June, 1856, to which Wright is a party, does not transfer his interest in the contracts to Sanborn, Carter & Bazin, but merely contains his consent that they may use the stereotype plates, on the terms and for the consideration therein stated, and the guaranty of C. Walker of the same date.
*611 After the execution of the agreement between Paine as Administrator, and Tower and Walker, the latter did not become, at law, the plaintiff’s principal debtors. The covenant of Tower and Walker was to a person, not personally liable to pay to the plaintiff the debt owing to him by D. Burgess & Company.
Whether the plaintiff could maintain any action by reason of that covenant, against Tower & Walker, to recover the debt due to him from Burgess & Company, will, to say the least, admit of some doubt. (Doolittle v. Naylor, 2 Bosw., 225; Trotter v. Hughes, 2 Kern., 74; King v. Whitely, 10 Paige, 465.)
On the facts as found, this contract and those of the 18th of the same month, were, in the intent of the parties, parts of a single arrangement, which looked to securing competent and responsible publishers, as the only method of making the contracts, which had been pledged to the plaintiff, of any value to him, or to Storrs, or Paine as Administrator of D. Burgess, or to the owners of the copyrights.
In Chester v. The Bank of Kingston, (16 N. Y. R., 338,) Mr. Justice Comstock, speaking of the dealings between the creditors and principal debtor, relied upon as a discharge of the sureties, says, that “ if they did so deal without the assent of the plaintiffs, (the sureties,) the latter were, to the amount of the note, discharged in equity, if not at law. If, however, they assented to the dealing, or have placed themselves in a situation where they cannot object, then their liability still remains, unless they have some other answer to it.”
No authority is cited, but the rules enunciated are stated, as being elementary or well settled law.
Mr. Theobald states the rule to be, that the surety is not discharged by the creditor’s agreeing to give time, if the agreement was authorized or ratified by the surety. (Prin. & Agent, [by Theobald,] p. 87, § 165.)
In Ex parte Harvey, In re Blakely, (27 Eng. L. & Eq., 280,) Turner, L. J., says: “It is not disputed that a surety, who concurs in an arrangement between the principal and a creditor, is not discharged by such arrangement.”
The concurrence or assent of the surety, or his express agreement, if there were one, may be shown by parol. (Wyke v. Rogers, 12 Eng. L. & Eq., 162.)
*612 A knowledge of the arrangement while it is being negotiated, taking part in and encouraging it, or aiding in perfecting it, will justify a finding that the surety assented to it. (Woodcock v. Oxford and Worcester Railway Co., 21 Eng. L. & Eq., 285.)
Mr. Storrs testifies, that he knew at the time of the arrangement between Sanborn, Carter and Bazin, and Mr. Wright; that these arrangements were understood by the parties generally before any of the contracts were executed; that the arrangement was desired by himself and Paine, and that neither of them objected to it.
Mr. Paine testified, that he knew generally, the features of the arrangement between Wright and the firm of Sanborn, Carter & Bazin; that he heard it talked about, and thinks he “ suggested the plan of paying Mr. Wright by a double copyright, (the one adopted,) or they spoke to me of it, and I thought it was fair.” Although each of them says he was “ not asked to assent ” to this arrangement, yet we think there was enough proved to warrant the finding, as a fact, of actual assent by Storrs and Paine, to the agreements of the 18th of June, 1856, and that Mr. Wright signed the paper of that date which he did execute, in the full conviction that its execution was desired by them, and received their cordial assent, and that he was justified in acting on that belief.
The judgment should be affirmed.