## ANHEUSER–BUSCH, Inc., v. BUDWEISER MALT PRODUCTS CORPORATION.

(Circuit Court of Appeals, Second Circuit. November 5, 1923.)

No. 53.

1. Trade-marks and trade-names and unfair competition ⊙⟹9—"Budweiser;" though geographical in origin, protected as trade-mark.

"Budweiser," forming part of complainant's trade-mark for beer and malt liquors, though geographical in origin, is nevertheless entitled to protection, because it has acquired a secondary meaning.

2. Trade-marks and trade-names and unfair competition ⊙⟹61—Use of name "Budweiser" for malt syrup, suggesting by-product of complainant's manufacture, unfair.

Where complainant, by long use and extensive advertising, created a market for its products under the trade-mark "Budweiser," to characterize its beer and malt liquors, a manufacturer of malt syrup cannot justify the use of the name "Budweiser Malt Syrup" on the ground that beer is not a malt product, since the name itself suggests that the product is a by-product of complainant's manufacture.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in equity by Anheuser-Busch, Incorporated, against the Budweiser Malt Products Corporation. From an order granting complainant's motion for preliminary injunction (287 Fed. 243), defendant appeals. Affirmed.

Gilbert & Gilbert, of New York City (A. S. Gilbert, Francis Gilbert and Jerome E. Malino, all of New York City, of counsel), for appellant.

Archibald Cox, of New York City, and Daniel N. Kirby, of St. Louis, Mo., for appellee.

Before ROGERS and MANTON, Circuit Judges, and AUGUS-TUS N. HAND, District Judge.

ROGERS, Circuit Judge. The complainant is a corporation organized under the laws of the state of Missouri, and its principal place of business is in the city of St. Louis. It filed its bill of complaint against the defendant, which is a New York corporation, with its principal place of business in the city of New York. The complainant is engaged in the business of manufacturing and selling certain malt products. In connection with its business it uses as a trade-mark the name "Budweiser." Its bill alleges that the defendant infringes its trade-mark, and it seeks a perpetual injunction restraining its use of that trade-mark in connection with any malt product not made by or for the complainant. It also prayed that a temporary restraining order might issue without delay, restraining the defendant from doing business under the name "Budweiser Malt-Products Corporation." An accounting and damages are also asked. The court below has issued a preliminary injunction which may be found in the margin.[1]

It appears that in or about the year 1875 one Carl Conrad, the complainant's predecessor, commenced the manufacture in St. Louis of a beer of distinctive character and excellence, through the firm of E. Anheuser & Co., consisting of Eberhard Anheuser and Adolphus Busch. This beer was brewed exclusively in the complainant's brewery, and it was sold and consumed in large quantities throughout the United States and elsewhere. For more than 40 years the complainant or its predecessor in title has put on the market a "Budweiser" beer, and by its skill and care built up an extensive reputation and demand for its product. The result was that at the time when the Act of Congress of November 21, 1918, known as the War-Time Prohibition Act, went into effect, more than $10,000,000 had been expended advertising said "Budweiser" and more than 3,000,000,000 bottles

[1] "Ordered, that an injunction issue herein enjoining and restraining the defendant, Budweiser Malt Products Corporation, its officers, agents, and servants, and all claiming or holding through or under it, until the further order of this court, from selling or offering for sale, or otherwise disposing of, any malt product bearing the name or trade-mark 'Budweiser,' or any imitation or infringement thereof, and from doing business under the name 'Budweiser Malt Products Corporation,' or any name containing the said name or trade-mark 'Budweiser' in connection with any malt product not by or for the complainant made, and from doing any other act or thing calculated directly or indirectly to represent that the business of the defendant is in any way associated with the business of complainant or that the product or products of defendant are products of complainant.

"And it is further ordered that the injunction directed to be issued herein, in so far as it relates to the use of the word 'Budweiser' by defendant as part of its corporate name, is hereby suspended for a period of 40 days from the date of the entry of this order, to enable the defendant to take the proper legal steps to change its corporate name so that it will not violate the injunction directed to be issued herein.

"Provided, however, that nothing herein contained shall be construed as enjoining the defendant from using the name 'Budweiser' as part of its corporate name in the collection of its outstanding accounts and in the prosecution of any actions, suits, or proceedings to recover the same."

of "Budweiser" had been sold in the United States alone, and the complainant's product, identified as such by the designation or mark "Budweiser," had been for upwards of 30 years sold everywhere throughout the United States, and in Mexico, Canada, South America, and elsewhere, and in the market named had been the best-known and most popular malt product of its kind produced in this country. The mark "Budweiser" had become generally known throughout the United States to those interested in malt products as meaning the complainant's product.

The complainant on July 23, 1907, registered as its trade-mark the term "Budweiser" under the 10-year clause of the Act of Congress of February 20, 1905. Its registration was for beer. On August 12, 1920, the complainant filed an application for the registration of the term as a trade-mark for malt syrup, claiming use since August 6, 1920. The application was opposed by defendant, which claimed prior use of a month or more. The case was pending in the Patent Office when the preliminary injunction was issued; and it is our understanding that the case is still pending in that office, awaiting the decision of this court in this case.

It appears from the testimony of the complainant's technical director and chief chemist, who had been in the service of complainant since 1893, that in the manufacture of its "Budweiser" beer the principal ingredient that entered into its manufacture was barley malt, made out of choice barley grain. The barley malt always constituted at least 60 per cent. of the ingredients entering into its manufacture. It also appears from his statement that the present beverage made by complainant under the name "Budweiser" is also made by the use of at least 60 per cent. of barley malt, so it is proper to call Anheuser-Busch's present "Budweiser" beverage a malt product. He added that the present beverage "Budweiser" is a malt product manufactured strictly in compliance with the requirements of the Volstead Act, and it is a malt liquor, in that the process of fermentation constitutes part of the process used in its manufacture; but the alcoholic content of the finished article is reduced as required by the Volstead Act, so that the finished product as offered for sale complies with that act. It also appears that the complainant manufactures and sells "Budweiser" Malt Extract for the use of bakers, which is a pure malt extract; that it also for many years has manufactured a pure malt extract called Malt Nutrine, which is a medicinal malt tonic; and that for some time it has been engaged in preparation for the manufacture of a malt sugar syrup for the manufacture of which malt will be used.

It appears that beer has been brewed in the town of Budweis, Bohemia, formerly a portion of Austria, since the eleventh century; that that beer was world-renowned for its excellent quality, which was due largely to the particularly fine quality of the barley raised in the vicinity and malted there. It was also due to the use in its manufacture of Bohemian pitch and Bohemian yeast as well as Sasser hops; and it appears that the complainant's predecessor, who designated his beer as "Budweiser," originally imported Bohemian barley, Bohemian

pitch, Bohemian yeast, and Sasser hops from which it manufactured · its beer in this country.

[1] This brings us to a consideration of the law applicable to the facts. It has been suggested that the term "Budweiser" ·is a geographical term, and therefore not a technical trade-mark. If "Budweis" and "Budweiser" are so nearly alike that the latter could properly have been called a geographical term, a question which it is not necessary now to decide, it is clear that the term "Budweiser" is one which has acquired in this country a secondary meaning. As was said by the court in Coca-Cola Co. v. Koke Co., 254 U. S. 143, 145, 41 Sup. Ct. 113, 65 L. Ed. 189, we may say in this case that:

"Whatever may have been its original weakness, the mark for years has acquired a secondary significance, and has indicated the plaintiff's product alone."

The right of this complainant to enjoin the use of the name of "Budweiser" was sustained in 1898, 25 years ago, in Anheuser-Busch Brewing Association v. Fred Miller Brewing Co. (C. C.) 87 Fed. 864, in a decision by Judge Seaman. That case was decided on the ground of unfair competition. The court did not then recognize the complainant as having any property right in the name "Budweiser," which it thought was to be regarded as geographical, and therefore not subject to appropriation as a trade-mark. The court declares, however, that:

"If the manufacture of beer was not of such character as to make this name specially applicable, and it was selected arbitrarily, and for the purpose of taking advantage of the established reputation of the complainant's Budweiser, and with the effect of disturbing its trade therein, such use constitutes unfair competition—is 'unfairly stealing away another's business and good will'—and must be regarded, in equity, as fraudulent."

It appears that even at that time the complainant's "Budweiser" beer had an established reputation which the defendant in that case was seeking to take advantage of. After that decision the complainant, as heretofore stated, registered its trade-mark "Budweiser" in the Patent Office, which registration was granted on July 23, 1907. The registration statement is as follows:

"The trade-mark has been continuously used in business by this corporation and its predecessor, C. Conrad & Co., since January, 1876. The class of merchandise to which the trade-mark is appropriated is class 51, malt preparations, not otherwise classified, and the particular description of goods comprised in said class upon which the trade-mark is used is beer."

[2] The real question in this case, as it appears to us, is whether, assuming that the complainant has a valid trade-mark in the term "Budweiser," and we have no doubt that it has in connection with the manufacture of beer, is it thereby entitled to complain of the use of that trade-mark by the defendant, who makes no use of it in connection with the manufacture of beer, but who uses it in connection with the manufacture and sale of a malt syrup. In answering this question, it is necessary to consider it in the light of the decision of this court in Aunt Jemima Mills Co. v. Rigney, 247 Fed. 407, 159 C. C. A. 461, L. R. A. 1918C, 1039. In that case we held that the complainant was

entitled to an injunction to restrain the infringement of a trade-mark under the following circumstances:

The complainant's trade-mark consisted in the name "Aunt Jemima's," together with a fanciful picture of a colored woman. This it used as a mark for its pancake flour. The Patent Office granted a certificate of registration for this mark as a "trade-mark for self-rising flour." Thereafter the defendant engaged in the manufacture of syrups and other articles, and two years after the registration of the aforesaid trade-mark it applied for the registration of a similar mark for pancake syrup made by it. The Patent Office granted to defendant a certificate of registration of this mark as a "trade-mark for pancake syrup and sugar cream." Some time thereafter the complainant sought to enjoin the defendant from using the trade-mark for use on its syrup. The lower court refused the injunction on the ground that the complainant used it as a trade-mark for flour and the defendant for syrup and that the two articles were wholly distinctive. The case was appealed to this court, and the decree below was reversed, and this court said:

"It is said that even a technical trade-mark may be appropriated by any one in any market for goods not in competition with those of the prior user. This was the view of the court below in saying that no one wanting syrup could possibly be made to take flour. But we think that goods, though different may be so related as to fall within the mischief which equity should prevent. Syrup and flour are both food products, and food products commonly used together. Obviously the public, or a large part of it, seeing this trade-mark on a syrup, would conclude that it was made by the complainant. Perhaps they might not do so, if it were used for flatirons. In this way the complainant's reputation is put in the hands of the defendants. It will enable them to get the benefit of the complainant's reputation and advertisement. These we think are property rights which should be protected in equity."

We think the above case decisive of this one, being unable to distinguish them in their essential facts. Malt, as the court below remarked, is known to be an ingredient of beer, and Budweiser malt syrup suggests to the ordinary person a by-product of Anheuser-Busch. The connection seems to us about as close as that between pancake flour and pancake syrup. We think it as obvious in this case, as in the other, that the public, or a large part of it, seeing this trade-mark on malt syrup, would conclude that it was made by the complainant. It would enable the defendant to get the benefit of the complainant's reputation and advertisement. The use of the term "Budweiser" by the defendant under the circumstances is an unmistakable attempt to gain the advantages of the complainant's reputation. The only knowledge of the name "Budweiser" in the United States is practically in connection with the complainant's product of Budweiser beer, popularly understood to be a malt product. The value of the term in this country consists of the reputation given it by the complainant. As the defendant obtains none of its products from Budweis, in Bohemia, we can discover no explanation for its adoption of the name, other than its desire to secure for its product the reputation which the complainant has built up for its product, and this the law does not permit it to do.

The appellant has called our attention to Pabst Brewing Co. v. Decatur Brewing Co., 284 Fed. 110, decided in 1922, by the Circuit Court of Appeals in the Seventh Circuit, and he states that in that case the court had under consideration the precise question here involved, and decided it adversely to the present appellee. If the decision in that case could be regarded as in conflict with the decision of this court in the Aunt Jemima Mills Co. Case, while it would not be controlling upon us, it would be entitled to, and would receive, our careful consideration. But we do not regard that case as involving the same question as the one now before the court. In the Pabst Brewing Company Case it was decided that the name "Blue Ribbon," established by the complainant as a trade-name for beer, was not infringed by its use as a trade-name for a malt extract, which could be used for making beer. But it appeared in that case that the name "Blue Ribbon" had been registered in the Patent Office more than 60 times as a trade-name in connection with various articles of commerce. Some of the registrations were for whisky, wine, vinegar, flavoring extracts, candy, chewing gum, chocolate, flour, bread, cigars, chewing and smoking tobacco, citrus fruits, fresh grapes, fresh deciduous fruits, and canned fruits. In view of the very general use of the term "Blue Ribbon" as a trade-name, the court concluded, very properly, as it seems to us, that the appellant's right to use it was limited to its registered product. Indeed, the court, in deciding the Pabst Brewing Co. Case, itself commented upon the facts in the case now before us and the decision upon it in the court below, which had already been rendered, and itself distinguished the two cases, saying:

"Outside of the beer industry, the name 'Budweiser' had no significance whatever in this country, and then only as applied to the Anheuser-Busch product. It is as arbitrary as though it were 'XYZ.' The term 'Blue Ribbon,' on the contrary, had long acquired special significance, wholly apart from its use as a trade-name for any product."

The order granting the preliminary injunction is affirmed.