### WILSON & CO., Inc., of CALIFORNIA v. THE BEST FOODS, Inc.

(Circuit Court of Appeals, Ninth Circuit. August 4, 1924.)

No. 4237.

1. **Trade-marks and trade-names and unfair competition ⬤⟿95(3)—Competitive use of words "Pecoa" and "Nucoa" as mark for vegetable butter justified preliminary injunction.**

Use by defendant of word "Pecoa" as a mark for vegetable butter on cartons similar to those on which plaintiff used words "Nucoa" as a mark on vegetable butter *held* to justify grant of a preliminary injunction.

2. **Appeal and error ⬤⟿954(1)—Appellate court will not reverse preliminary injunction, in absence of showing of abuse of discretion.**

Circuit Court of Appeals will not reverse order of District Court granting preliminary injunction in trade-mark infringement case, unless it is made to appear that District Court abused its discretion. (Per Ross, Circuit Judge.)

Appeal from the District Court of the United States for the District of Nevada; Edward S. Farrington, Judge.

Suit by The Best Foods, Inc., against Wilson & Company, Inc., of California. From an order granting a preliminary injunction, defendant appeals. Affirmed.

George A. Chritton, William R. Brown, Benj. B. Schneider, and Dyrenforth, Lee, Chritton & Wiles, all of Chicago, Ill., William A. Loftus, of San Francisco, Cal., and Jerome L. Van Derwerker, of Reno, Nev., for appellant.

McCutchen, Olney, Mannon & Greene, Edward J. McCutchen, Warren Olney, Jr., J. M. Mannon, Jr., and A Crawford Greene, all of San Francisco, Cal., and Brown & Belford, of Reno, Nev., for appellee.

Before GILBERT, ROSS, and RUDKIN, Circuit Judges.

ROSS, Circuit Judge. [1] The appellant was defendant in the court court below to a suit there brought by the present appellee, charging the defendant with infringement of the complainant's trade-mark and unfair competition. In support of the bill a number of affidavits were filed, as also a motion for a preliminary injunction. The word "Nucoa" constitutes the appellee's trade-mark, and the word "Pecoa" that subsequently used by the appellant, under which it is alleged to have carried on the unfair competition complained of. The article sold by the respective parties was put up in one-pound cartons of similar shape and size; the background of the "Nucoa" carton being yellow, with the words on each side, "A pure wholesome spread for bread containing vital food elements for health and growth," surrounded by blue lines, and on the top and bottom of the carton these words:

ONE POUND NET<br>
NUCOA<br>
COCO-NUT BRAND<br>
FINEST TABLE QUALITY<br>
OLEOMARGARINE<br>
Contains 1–10 of 1% Benzoate Soda<br>
THE BEST FOODS, INC.<br>
Reg. U. S. Pat. Office

Opposite which is the figure of a girl holding the handle of something in a cocoanut, on which are the words:

NUCOA<br>
THE ORIGINAL

surrounded by blue lines; the hat and apron of the girl and the words "The Best Foods, Inc.," also being in blue.

The cartons used by the appellant have a background of blue with these words on top:

PECOA<br>
NUT MARGARINE<br>
Contains 1–10 of 1% Benzoate of Soda<br>
Net Weight     One Pound<br>
OLEOMARGARINE.

And on one side these words:

PREPARED FROM PURE VEGETABLE OILS<br>
EXCELLENT FOR COOKING, BAKING<br>
AND AS A SPREAD FOR BREAD<br>
KEEP IN A COOL PLACE

The bill alleged, not only that the appellant's trade-mark infringed that of the complainant, but also that defendant had simulated the complainant's cartons, trade slogans, and certain other of its advertising matter, all of which allegations were put in issue by the answer. A large number of affidavits were filed in support of each pleading by the respective parties. Upon the hearing of the motion, the court be-

low granted the preliminary injunction, from which the present appeal is taken.

[2] Upon such a question the well-settled rule ·is that the appellate court will not reverse the order of the court below unless it is made to appear that that court abused the discretion with which it was invested. The decisions to that effect are so numerous that it will be enough to cite two made by this court. Southern Pacific Co. v. Earl, 82 Fed. 690, 27 C. C. A. 185; Twenty-One Mining Co. v. Original Sixteen to One Mine, Inc., 240 Fed. 106, 110, 153 C. C. A. 142.

The complainant alleged, among other things, in substance, that prior to July 25, 1905, it was engaged in manufacturing and· selling vegetable butter in commerce with foreign nations and among the several states under the trade-mark "Nucoa," having prior thereto obtained registration thereof in the Patent Office of the ·United States, which has since been in full force and effect, and has been continuously used by it in the sale of vegetable butter and by those from whom it derived its title, since on or about February 11, 1892; that on or about May 24, 1920, complainant, in accordance with the acts of Congress (Comp. St. §§ 9517–9524, 9530–9584) relating to copyrights, deposited in the Patent Office for registration a print, the title of which is "Nucoa Churn Girl," a certificate of which registration was duly issued under the seal of the Patent Office August 10, 1920, which print of the churn girl has been in constant use by complainant in .connection with the sale of its vegetable butter product, nut margarine, sold under the trade-mark "Nucoa," and is prominently displayed on its cartons; that the manufacture and sale of nut margarine constitute a very substantial portion of the complainant's business, the gross annual receipts of which are in excess of $6,000,000; that it is a vegetable butter, composed principally of cocoanut oil and peanut oil churned in milk, and is extensively known and purchased as a safe, healthful, pure, economical food product, used for a table spread and for cooking purposes; that it contains no animal fats of any kind, and, except to the extent that it is churned in milk, contains no animal products, and is popularly known as and actually is a vegetable butter, which competes in all respects with butter churned from milk; ·that in the year 1915 the complainant placed its nut margarine. upon the market inclosed in a distinctive type of container or carton, for the purpose of distinguishing it from all other products of a competing or similar nature; that at first its sales of that product were very small, but steadily increased from year to year, and it is now and for many years last past has proved to be an article of unusual popularity, to the complainant's great profit; that in or about July, 1917, complainant duly registered, pursuant to the laws of the state of California, the trade-mark "Nucoa Nut Margarine" for a vegetable butter, which registration was completed·in or about September of that year, prior to which its trade-mark "Nucoa" was used by complainant in connection with the manufacture and sale of vegetable butter other than nut margarine; that, shortly after the complainant had commenced the sale of its nut margarine product under the trade-mark "Nucoa," it introduced it under that mark to the western part of the United States, and particularly the territory known as the Pacific

Coast States, and in or about December, 1918, commenced the manufacture and sale of it under the trade-mark "Nucoa" at its plant in the city and county of San Francisco, and has maintained continuously ever since that time a wide advertising campaign in the Pacific Coast States by means of newspaper displays, advertisements in magazines and trade journals, billboards, posters, placards, leaflets, booklets, blotters, projections on motion picture screens, displays in theater programs, exhibitions at fairs, and otherwise, spending large sums of money in connection with it; that with the aid of such advertising and otherwise an extensive market throughout the United States, and particularly in the Pacific Coast States, has been built up, and complainant has acquired and enjoyed an extensive good will for its said product so marketed under the trade-mark "Nucoa," and the public thereby has come to be thoroughly familiar with that name, and to use it as a table spread and for cooking purposes, and for all uses to which butter can be put; that large numbers of people use and have become accustomed to use the said product in addition to their use of butter and also in lieu thereof; that the public generally, and particularly in the Pacific territory, is accustomed to buy the said product simply by the use of the word "Nucoa," or the words "Nucoa Nut Margarine," and by it familiarity with the style of the complainant's carton and the descriptive and pictorial matter contained thereon; that the complainant sold from its San Francisco plant to certain named states in the year 1919 3,897,514 pounds of Nucoa, during the year 1920 13,626,129 pounds, during the year 1921 11,887,227 pounds, and during the year 1922 10,315,080 pounds of Nucoa; that continuously since the year 1918, and until the 1st day of July, 1921, all nut margarine manufactured and sold by the complainant in the territory above mentioned under tthe name "Nucoa," except in the state of Oregon, was contained in cartons exactly similar to the carton first above referred to, except on that carton, instead of the churn girl picture, was placed a palm tree design; that between July 1, 1921, and approximately the 1st day of July, 1922, except in the state of Oregon, two styles of carton were used and employed in marketing complainant's Nucoa brand of nut margarine, to wit, that with the palm tree design and the otherwise exactly similar one with the churn girl picture, which last-mentioned carton has ever since July 1, 1922, been the style of carton employed by complainant for marketing its Nucoa brand of nut margarine in and about the specified territory on the Pacific Coast except in the state of Oregon; that for a considerable period prior to January 1, 1923, the defendant to the suit produced at its plant in the city of Los Angeles and marketed in the same territory, as a competitor of complainant, a certain brand of nut margarine of substantially the same descriptive qualities as the complainant's product Nucoa, known and designated by the trade-mark "Wilson's Nut Margarine," which was not sold in large quantities, either in the wholesale or retail market, of said territory; and that, although it competed with complainant's product, it was a very poor competitor, and its sale did not materially affect the sale of the complainant's product; that the "Wilson's nut margarine" was substantially the same kind of product as "Nucoa nut margarine,"

but was greatly inferior as respects stability, quality of ingredients, care in manufacture, taste, and keeping qualities, for which reasons the complainant's "Nucoa" product was not appreciably affected by the competition offered by "Wilson's nut margarine"; that on or about January 1, 1923, the defendant to the suit discontinued the name "Wilson's nut margarine" in connection with its nut margarine product, and adopted the name "Pecoa" in place of "Wilson's," since which time it has used and employed that name in the marketing of its margarine product theretofore known as "Wilson's nut margarine" in the Pacific territory referred to, using in furtherance of its sale the name "Pecoa" and the Pecoa carton above set out, with the sole purpose of profiting by the similarity of its name and carton to the name and carton under which the complainant markets its product, and with the intent thereby to mislead, deceive, and confuse the retail public, and thus causing the purchase, to a large extent, of the defendant's product for that of the complainant, to the latter's very substantial injury.

Many of the affidavits filed on behalf of the complainant strongly tend to support the allegations of the bill, while some of those filed on behalf of the defendant to the suit were, in some respects, in contradiction of those averments. Manifestly, the trial court was not called upon on the application for a preliminary injunction to decide the merits of the case, nor would it have been proper for it to have undertaken to do so; but we think it perfectly plain that the similarity of the trade-marks and cartons of the respective parties was such that the court below cannot be properly held to have abused its discretion in granting the preliminary injunction complained of. There were, of course, innumerable names that the appellant could have selected, instead of that of "Pecoa," and any number of sizes and shapes and designs and phrases under which to market its product, without adopting a name, carton, design, and phrase so similar to those of the complainant, as it did.

The order is affirmed.