## FRANCE MILLING CO. v. WASHBURN–CROSBY CO.

(District Court, S. D. New York. January 5, 1925 )

**1. Trade-marks and trade-names and unfair competition ⬅61—The use of a trade-mark for wheat flour held not to exclude its use by another for prepared pancake or buckwheat flour.**

Wheat flour on the one hand and prepared pancake flour and prepared buckwheat flour on the other hand are different and distinct classes of commodities, and the use of a trade-mark for wheat flour does not exclude its use by another for either of the other class.

**2. Trade-marks and trade-names and unfair competition ⬅45, 61—Right conferred by use and registration of "Gold Medal" as trade-mark is limited to registered product.**

The name "Gold Medal," used as a trade-mark is not distinctive of any particular commodity, but is a general term intended to denote superior merit or quality, and the right conferred by its use and registration as a trademark is limited to the registered product.

**3. Trade-marks and trade-names and unfair competition ⬅61—Complainant held entitled to protection in its trade-mark "Gold Medal" for prepared pancake and buckwheat flour.**

Complainant which for 20 years had used the name "Gold Medal" as a trade-mark for prepared pancake flour and prepared buckwheat flour *held* entitled to protection against its use on such articles by defendant which had used the name for a longer period as a trade-mark for wheat flour.

**4. Trade-marks and trade-names and unfair competition ⬅86—Right to injunctive relief; laches.**

Defendant's trade-mark for flour had been openly used for 20 years by complainant as a trade-mark for a different product, in making which, flour, one of the principal ingredients, had been largely purchased from defendant. *Held*, that defendant was barred by laches from invoking injunctive relief against such use.

In Equity. Suit by the France Milling Company against the Washburn-Crosby Company. Decree for complainant.

Darby & Darby, of New York City (Samuel E. Darby, Jr., of New York City, of counsel), for plaintiff.

Frank A. Whiteley, of Minneapolis, Minn., Edward S. Rogers, of Chicago, and Harry D. Nims, of New York City, for Washburn-Crosby Co.

WINSLOW, District Judge. The plaintiff has moved on an order to show cause for a preliminary injunction herein restraining the defendant from using the trade-mark "Gold Medal" in connection with prepared pancake flour and prepared buckwheat flour.

On the return of the motion and on its order to show cause the defendant has made a counter motion asking for a preliminary injunction restraining the plaintiff from continuing the use of the trade-mark "Gold Medal" as applied to prepared pancake flour and prepared buckwheat flour.

The facts are substantially as follows: On January 1, 1874, the Northwestern Consolidated Milling Company first adopted and used the trade-mark "Gold Medal" for flour, particularly wheat flour.

In 1880 the Washburn & Crosby Company, the predecessor of the defendant, adopted and used the same trade-mark for wheat flour, and the present defendant, successor to the Washburn & Crosby Company, registered the trade-mark on April 27, 1886, No. 13253. From that date until on or about June 1, 1923, the defendant corporation used the trade-mark solely in connection with the sale of its wheat flour, and, as far as this record discloses, never applied the trade-mark to prepared pancake flour or prepared buckwheat flour.

In 1904 the plaintiff, then being engaged in the manufacture of prepared pancake flour and prepared buckwheat flour, developed a formula. Its products, manufac-

tured according to this formula, were exhibited at the Louisiana Purchase Exposition, St. Louis, Mo., and the plaintiff was there awarded a gold medal and diploma incident thereto for the specific class of prepared pancake flour and prepared buckwheat flour. Immediately after this award the plaintiff adopted for its use the trade-name "Gold Medal" as applied to its prepared pancake flour and prepared buckwheat flour, and from that time (1904) until the present plaintiff has enjoyed the quiet and uninterrupted and exclusive use of the trade-mark "Gold Medal" as applied to its products, and its business and the sale of its products has grown from small proportions, particularly in the states east of the Mississippi, to a large business. The plaintiff's products have been packaged in pasteboard cartons.

The defendant, in the sale of its products, has sold them in cloth sacks, bags, or barrels, except for a brief period in 1900, when its wheat flour was packaged in a pasteboard carton for a few weeks, and then the practice was abandoned and never revived.

The plaintiff, in the preparation of its prepared pancake flour and prepared buckwheat flour, has from time to time since 1912, and each year thereafter, purchased wheat flour from defendant, which is one of the ingredients of its prepared flours. In the early part of the year 1923 some correspondence, initiated by the plaintiff, asserting plaintiff's rights, took place between plaintiff and defendant concerning the rumored prospective use by the defendant of the trade-mark "Gold Medal" as applied to prepared pancake flour and prepared buckwheat flour. Thereafter, in December, 1923, without notice, the trade-mark No. 177,829 was issued to the defendant for the trade-mark "Gold Medal" for pancake flour. The sworn statement of the vice-president of the defendant, submitted on the application, in substance was to the effect that prepared pancake flour and prepared buckwheat flour are separate and distinct classes of goods, and so recognized by the defendant. Thereafter, on March 4, 1924, the plaintiff filed a petition in the Patent Office to cancel the trade-mark so issued (No. 177,829) to the defendant for pancake flour. As a result of such petition, and pursuant to a stipulation thereafter entered into between the France Milling Company, the petitioner for the cancellation of said trade-mark, and the Washburn-Crosby Company, the respondent, the Washburn-Crosby Company withdrew its opposition to the cancellation proceeding, and thereupon, on September 12, 1924, the Examiner of Interferences in the Patent Office rendered a decision recommending that the registration theretofore filed by the Washburn-Crosby Company for said trade-mark for the use of the words "Gold Medal," as applied to prepared pancake flour, be canceled. This was done.

The defendant herein is now selling prepared pancake flour and prepared buckwheat flour in pasteboard cartons with the trademark "Gold Medal" thereon in the same territory in which plaintiff for over 20 years has enjoyed the exclusive right to that trademark on its particular class of goods.

The defendant corporation, on its counter motion, contends that the trade-mark "Gold Medal," which it has used continuously since 1880 as applied to flour, necessarily includes pancake flour. It says that "Gold Medal" flour is the leading brand of the country, and that a vast business has been conducted by the defendant in this particular brand. Large sums of money have been spent by the defendant in advertising this brand, and it contends that the plaintiff, on its part, knowing the value and reputation of the trade-mark "Gold Medal," appropriated it and applied it to its prepared pancake flour, and that such use is an infringement of the defendant's rights, and that the public is constantly being deceived into the belief that the plaintiff's use of the words as applied to pancake flour originates with the plaintiff.

The facts necessary to a determination of the issues before the court on the motion and counter motion are undisputed, and therefore the result of the motion herein is equivalent to a final hearing on the merits.

There are two questions which naturally present themselves for determination. The first is whether or not wheat flour on the one hand and prepared pancake flour and prepared buckwheat on the other hand are separate and distinct classes of commodities, or whether they are identical. The second question to which attention must be directed has to do with the words "Gold Medal" as a trade-mark and the latitude which must be recorded by this Court in the application of those words.

[1] At the outset, the record discloses that the defendant itself (if the sworn statement of its vice president is considered at all), when it filed its application in 1924 for the trade-mark "Gold Medal" as applied to pancake flour, considered, certainly at that time, that wheat flour and the prepared flours were different classes of commodities.

However, the defendant contends that this registration by it (No. 177,829), which included pancake flour, was inadvertent, and was voluntarily canceled.

"It was inadvertently obtained, and constituted a mistake and blunder, and that defendant never intended to register the words 'Gold Medal' for pancake flour and cake flour apart from flour generally."

Thereupon, as heretofore stated, after proceedings had been instituted by plaintiff to cancel such registration, a stipulation was entered into, as indicated, pursuant to which the registration was canceled.

The defendant now contends that the record is conclusive that any flour product labeled "Gold Medal" is assumed by the public to be the product of the Washburn-Crosby Company, and that any flour, whether called pancake flour or merely flour, can support but a single trade-mark right.

In Aunt Jemima Mills v. Rigney, 247 F. 407, 159 C. C. A. 461, L. R. A. 1918C, 1039, it was held by the Court of Appeals that pancake flour and pancake syrup are so closely allied that the use of the distinctive "Aunt Jemima" trade-mark upon syrup was a proper subject for an injunction at the suit of Aunt Jemima Mills Company, which had used the trade-mark, however, only on pancake flour. This decision has been cited with approval in the recent case, also in this circuit, of Anheuser-Busch v. Budweiser Malt Products Corp. (C. C. A.) 295 F. 306. The court in that case said at page 309 (considering the distinctive word "Budweiser"):

"The real question in this case, as it appears to us, is whether, assuming that the complainant has a valid trade-mark in the term 'Budweiser,' and we have no doubt that it has in connection with the manufacture of beer, is it thereby entitled to complain of the use of that trade-mark by the defendant, who makes no use of it in connection with the manufacture of beer, but who uses it in connection with the manufacture and sale of a malt syrup?"

In the "Budweiser" Case the court, commenting upon the argument used in the "Aunt Jemima" Case against the issuance of an injunction to the effect that no one wanting syrup could possibly be made to take flour, said:

"But we think that goods, though different, may be so related as to fall within the mischief which equity should prevent."

The court further said (Budweiser Case) in commenting upon the case of Pabst Brewing Co. v. Decatur Brewing Co. (C. C. A.) 284 F. 110, which latter case involved the trade-mark "Blue Ribbon," that the use of the words "Blue Ribbon" did not involve the same question as the use of the word "Budweiser," and "the only knowledge of the name 'Budweiser' in the United States is practically in connection with the complainant's product of Budweiser beer, popularly understood to be a malt product. The value of the term in this country consists of the reputation given it by the complainant." 295 F. 306, at page 310.

This very cogent reasoning of the court in regard to the use of the word "Budweiser" and its limited application in this country at once suggests the inquiry as to the use of the words "Gold Medal" and the latitude to be accorded to those words. Both the plaintiff and the defendant have been using the words 'Gold Medal" as applied to their respective commodities for long periods of time, the plaintiff for upwards of 20 years and the defendant for more than double that time. Each has built up a great business. The case of George et al. v. Smith et al. (C. C.) 52 F. 830, is of interest. In that case the plaintiff had used the trade-mark, the not particularly distinctive word, "Epicure" for a brand of packed salmon. The defendants had previously used the same trademark for canned fruits and vegetables. When the defendants sought to use this trade-mark for canned salmon the court issued an injunction holding that the earlier use by the defendant of the trade-mark on canned fruit did not pre-empt its use for all time in connection with canned goods of every variety.

The case of Lawrence v. P. E. Sharpless Co. (D. C.) 203 F. 762, affirmed 208 F. 886, 126 C. C. A. 46, held that a trade-mark consisting of the figure of a cow upon the defendant's brands of butter prior to complainant's use of the same figure for cheese would not invalidate the complainant's trade-mark, if the figure of the cow is a valid trade-mark for cheese or butter. While butter and cheese are both dairy products, they are such distinctly different classes that neither can be said in any sense to enter into competition with the other. It is manifest that wheat flour does not in any sense compete with prepared pancake flour or prepared buckwheat flour. Both are food products. The prepared pancake flour has wheat flour as one of its ingredients. It is no answer to say that one might as well sophomorically argue that "Gold Medal" as a distinct brand is equally applicable to "biscuit flour" or "bread flour" or "waffle flour" or "pie flour," etc. These things are

uses to which the housewife or baker applies her skill. In the case at bar the plaintiff has compounded a distinctive marketable commodity. It would be equally fallacious to say that defendant's trade-mark "Gold Medal" includes every food product containing wheat flour.

In the case of Borden Ice Cream Co. v. Borden's Condensed Milk Co., 201 F. 510, 121 C. C. A. 200, it was contended that the use of the trade-name "Borden" as applied to ice cream products, which name had been previously adopted and used by the Borden Condensed Milk Company, was properly the subject for injunctive relief. Condensed milk formed one of the ingredients of ice cream, just as in the case at bar wheat flour is an ingredient, probably the principal ingredient, of the prepared pancake flour. The Circuit Court of Appeals in the Seventh Circuit (Borden Case, supra), referring to the facts, said:

"The old company * *. * never has manufactured what is known as commercial ice cream," while "the new company * . * * was incorporated for the sole purpose of manufacturing and putting on the market such an article."

The court held that the use of the name "Borden" was not susceptible of exclusive use, and that the alleged offender could make anything under that name which the complainant had not already made and offered to the public. The court further said:

"The name 'Borden,' until appellants came into the field, never had been associated with commercial ice cream. By making commercial ice cream the appellants do not come into competition with the appellee. In the absence of competition, the old company cannot assert the rights accruing from what has been designated as the secondary meaning of the word 'Borden.' The phrase 'unfair competition' presupposes competition of some sort. In the absence of competition the doctrine cannot be invoked.

"There being no competition between the appellants and appellee, we are confronted with the proposition that the appellee, in order to succeed on this appeal, has and can enforce a proprietary right to the name 'Borden' in any kind of business, to the exclusion of all the world.

"It is urged that appellee has power, under its charter, to make commercial ice cream, and that it intends some day to do so. If such intention can be protected at this time, it might well be that appellee, having enjoined appellants from making commercial ice cream, would rest content with

selling its evaporated milk to ice cream dealers, and never itself manufacture the finished product. But, as was well stated by Judge Coxe, in George v. Smith, supra: 'It is the party who uses it first as a brand for his goods, and builds up a business under it, who is entitled to protection, and not the one who first thought of using it on similar goods, but did not use it. The law deals with acts and not intentions.'"

The court is of the opinion that flour and prepared pancake flour are different classes of commodities.

[2] In considering the character of the trade-mark itself the words "Gold Medal" suggest superior merit or quality, similar to the trade-mark "Blue Ribbon'" which was the subject of consideration in Pabst Brewing Co. v. Decatur Brewing Co., supra, in which the court said:

"Appellee brewing company had long operated a brewery at Decatur, Ill., but, having discontinued operations, it handled for Pabst its beers, including the 'Blue Ribbon' brand, for Decatur and vicinity, until such time as manufacture and sale of beer was prohibited. In February or March, 1919, appellee began to put out a malt extract under the name of 'Blue Ribbon,' and soon acquired for it a very considerable trade, and it then secured Patent Office publication 'Blue Ribbon' as its trade-mark for malt extract. It had communicated with appellant, stating its intention to use the name in connection with such product, and thereafter appellant objected to its use, claiming it alone had a right to use it with such product. Up to that time, however, appellant's use of the name had been in connection with beer only, and, subsequent to prohibition, with its near beer. It had put out a malt extract under the name of 'Frementone,' and a very similar, if not wholly identical, product—malt syrup—under the name of 'Purity.' But, some weeks after appellee began marketing malt extract under the 'Blue Ribbon' name, the Pabst Company applied the name to certain of its malt syrup, although there is evidence of their manifestation of intention to do so some time before. The evidence, however, requires the conclusion that, as between these parties, appellees were the first by several weeks to apply the name to a malt extract or syrup."

Returning to the decision in this circuit of Anheuser-Busch, Inc., v. Budweiser Malt Products Corp., supra, it may be said that that decision would, however, be controlling upon this court, if the rule there laid down

is contrary to that set forth in the "Blue Ribbon" case.

Judge Rogers, speaking for the Circuit Court of Appeals, 295 F. 306 ("Budweiser"), commenting on the opinion in the "Blue Ribbon" Case, which at first superficial reading might seem to be at variance with the Anheuser-Busch Case in this circuit, said:

"The appellant has called our attention to Pabst Brewing Co. v. Decatur Brewing Co., 284 Fed. 110, decided in 1922, by the Circuit Court of Appeals in the Seventh Circuit, and he states that in that case the court had under consideration the precise question here involved, and decided it adversely to the present appellee. If the decision in that case could be regarded as in conflict with the decision of this court in the Aunt Jemima Mills Co. Case, while it would not be controlling upon us, it would be entitled to, and would receive, our careful consideration. But we do not regard that case as involving the same question as the one now before the court. In the Pabst Brewing Company Case it was decided that the name 'Blue Ribbon,' established by the complainant as a trade-name for beer, was not infringed by its use as a trade-name for a malt extract, which could be used for making beer. But it appeared in that case that the name 'Blue Ribbon' had been registered in the Patent Office more than sixty times as a trade-name in connection with various articles of commerce. Some of the registrations were for whisky, wine, vinegar, flavoring extracts, candy, chewing gum, chocolate, flour, bread, cigars, chewing and smoking tobacco, citrous fruits, fresh grapes, fresh deciduous fruits, and canned fruits. In view of the very general use of the term 'Blue Ribbon' as a trade-name, the court concluded, very properly, as it seems to us, that the appellant's right to use it was limited to its registered product. Indeed, the court in deciding the Pabst Brewing Company Case, itself commented upon the facts in the case now before us and the decision upon it in the court below, which had already been rendered, and itself distinguished the two cases, saying: 'Outside of the beer industry, the name "Budweiser" had no significance whatever in this country, and then only as applied to the Anheuser-Busch product. It is as arbitrary as though it were "X Y Z." The term "Blue Ribbon," on the contrary, had long acquired special significance, wholly apart from its use as a trade-name for any product.'"

The suggested conflict between the opinions in the "Blue Ribbon" Case and the "Budweiser" Case may be argumentative, but is not real; it is not even seeming conflict.

In the recent case of National Commodities Co. v. Viret et al., 296 F. 664, the Circuit Court of Appeals in this circuit, referring to the trade-mark "Palm Beach," speaks with approval of the Pabst "Blue Ribbon" Case.

In the "Blue Ribbon" Case upwards of 60 trade-mark registrations were effected on various commodities using the words "Blue Ribbon." In the instant case the affidavit of Mr. Thomas discloses that not less than 65 different registrations of the words "Gold Medal" have been used for various commodities, including many kinds of food products. Fifty-seven of these were secured subsequent to the defendant's registration of these words.

[3] I am of the opinion that the plaintiff has established its right to retain and use its trade-mark "Gold Medal" as applied to its product. The record discloses that plaintiff has used "Gold Medal" in connection with its pancake flour for 20 years. I am of the opinion that plaintiff is entitled to injunctive relief against the defendant as applied to the trade-mark on the commodities in which plaintiff deals.

[4] In considering the defendant's counter motion the first question that impresses itself upon the inquiring mind is the question of laches. The record is quite satisfying that for over 20 years the plaintiff has openly employed the trade-mark "Gold Medal" on its prepared pancake flour and prepared buckwheat flour, during which period of time it has purchased wheat flour from the defendant. It is quite possible that this of itself was constructive notice. It is hard to come to any other conclusion than that the defendant must have known for years that the plaintiff was using the trade-mark "Gold Medal" as applied to its commodities. Such laches, if no other reasons were present, might preclude injunctive relief to the defendant. C. B. Fleet Co. v. Mobile Drug Co. (C. C. A.) 284 F. 813; Thos. J. Carroll & Son v. McIlvaine & Baldwin, 183 F. 22, 105 C. C. A. 314; Valvoline Oil Co. v. Havoline Oil Co. et al. (D. C.) 211 F. 189.

The uninterrupted use by the defendant of the trade-mark "Gold Medal" as applied to flour and the facts disclosed in this record sustain defendant's right to such use as applied to wheat flour. If the defendant desires to enter the competitive field in the manufacture and distribution of prepared

pancake flour or prepared buckwheat flour, a very simple method of advertising to the effect that such products are manufactured by the distributors of Gold Medal wheat flour will preserve to the defendant its right to enter this field, and get whatever benefits it is legitimately entitled to by reason of the wide advertising of its Gold Medal flour in this and in other countries. But the plaintiff, on its part, is entitled to have its business similarly protected. Plaintiff's business has been built up from small beginnings to larger proportions, although such proportions may seem relatively small when compared to the vast business of the defendant.

I am of the opinion that the use of the words "Gold Medal" by the defendant, as applied to its wheat flour, does not justify, on the record before me, the expansion or extension of such claim to the prepared pancake and buckwheat flours of the plaintiff, which concededly are compounded with ingredients other than wheat flour and adapted for use in the preparation of food products in a class by themselves.

The motion of the plaintiff for an injunction will be granted. The counter motion of the defendant will be denied. The order may be settled on notice.