## THE BEST FOODS, Inc., v. HEMPHILL PACKING CO.

(District Court, D. Delaware. March 25, 1925.)

No. 527.

**1. Trade-marks and trade-names and unfair competition �köö21—Right to trade-mark for nut margarine not measured by such use or commencement thereof, in view of prior use for hard vegetable butter.**

Neither use by complainant of trade-mark on nut margarine, nor the time for the beginning of such use, is the criterion by which the scope of complainant's rights with respect to such trade-mark under Trade-mark Act 1905, § 16 (Comp. St. § 9501), are to be measured, where complainant for a long time prior thereto used such trade-mark for hard vegetable butter, made from cocoanut oil.

**2. Trade-marks and trade-names and unfair-competition �köö70(1)—Trade-mark of another may not be affixed to goods intimately connected with article that has borne mark.**

Under Trade-Mark Act 1905, § 16 (Comp. St. § 9501), the trade-mark of another may not be affixed to goods that are in some manner so intimately connected with the article that has borne the mark as to make not unreasonable a supposition or belief on the part of the purchasing public that the same person or company, or affiliated persons or companies, are the manufacturers or vendors of both.

**3. Trade-marks and trade-names and unfair competition �köö70(3)—Trade-mark "Nucoa" on vegetable butter held infringed by use of "Milcoa" for nut margarine.**

Trade-mark "Nucoa" for hard vegetable butter *held* infringed by use of trade-mark "Milcoa" on nut margarine; the syllable "coa" being appropriable and not descriptive of cocoanut.

**4. Trade-marks and trade-names and unfair competition �köö93(3)—Evidence held insufficient to prove abandonment of trade-mark.**

Evidence of use by others of somewhat similar trade-marks *held* insufficient to prove abandonment of trade-mark "Nucoa" as trademark for nut margarine.

**5. Trade-marks and trade-names and unfair competition �köö32—Actual intent to abandon, essential to "abandonment" of trademark.**

To establish defense of abandonment of trade-mark, it is necessary to show not only acts indicating a practical abandonment, but an actual intent to abandon.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Abandon—Abandonment.]

**6. Trade-marks and trade-names and unfair competition �köö75—Proof of actual instances in which purchasers had been misled, not essential to proof of infringement.**

In suit for infringement of trade-mark, complainant need not prove actual instances in which purchasers had been misled, the question being whether the similarity is so great that ordinary purchasers buying with ordinary caution are likely to be misled.

**7. Trade-marks and trade-names and unfair competition �köö70(3)—Test of "colorable imitation," stated.**

The test of "colorable imitation" is, not whether a difference may be recognized between the names of two competing articles when placed side by side, but whether the difference will be recognized by the purchaser with no opportunity for comparison.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Colorable Imitation.]

**8. Trade-marks and trade-names and unfair competition �köö86—Right to accounting, but not right to injunctive relief, held barred by laches.**

Three-year delay in commencement of suit to enjoin infringement of trade-mark, delay in notifying defendant's predecessor, the bona fide transfer for a valuable consideration of predecessor's business and good will to defendant, and continued efforts to build up sale of product under infringing trade-mark, did not bar right to injunctive relief, but did bar right to an accounting.

In Equity. Suit by The Best Foods, Incorporated, against the Hemphill Packing Company. Decree for complainant.

See, also, 295 F. 425; 300 F. 642.

Charles F. Curley, of Wilmington, Del., and George M. Wolfson, of New York City, for plaintiff.

Walter L. Sheppard, of Philadelphia, Pa., Abram B. Stratton, of Chicago, Ill., Henry D. M. Sherrerd, of Philadelphia, Pa., and Andrew C. Gray, of Wilmington, Del., for defendant.

MORRIS, District Judge. The complainant, The Best Foods, Inc., owner and user of the registered trade-mark "Nucoa" for vegetable butter, charges the defendant, Hemphill Packing Company, with infringement of that mark by the use of the latter's registered trade-mark "Milcoa" on its nut margarine and with unfair competition, and prays for the usual equitable relief. The defenses are: (1) Noninfringment; (2) no unfair competition; and (3) laches. The cause is on final hearing.

The plaintiff was organized in 1903 under the name of The Nucoa Butter Company. It retained that name until June of 1923. It was then changed to The Best Foods, Inc. About the time of its organization, it acquired by assignment the trade-mark rights in "Nucoa" of its predecessor, Loders & Nucoline, Limited. Thereafter, on July 25,

1905, it caused the trade-mark to be registered, No. 44779. Therein it is stated that the class of merchandise to which the trade-mark is appropriated is butter, and the particular description of goods comprised in the class upon which the trade-mark is used is vegetable butter. Until 1915 the plaintiff used "Nucoa" as a trade-mark for hard vegetable butter only. That butter is obtained from cocoanut oils by pressure, is employed in the confectionery, baker, and cracker trades, and is neither used nor adapted for use as a table butter or "spread for bread." It is made in large, compact masses, and is packed and distributed for sale in boxes or tubs. During the year 1915, the plaintiff began the manufacture and sale of a nut margarine produced by churning vegetable oil, mainly cocoanut oil, in animal milk. Its main use is as a butter substitute or "spread for bread"; but, like the hard vegetable butter, it may also be used as a vegetable shortening, a frying fat, and as an ingredient of cakes and icings. This product is packed and sold in pound cartons. Though the plaintiff placed conspicuously thereon its name "The Nucoa Butter Company," it did not use the word "Nucoa" as a trade-mark therefor until December of 1917.

[1-3] In the year 1916 a third person began using the word "Troco" as a trade-mark for its nut margarine and caused the same to be registered. It has since continued the use of that mark. This fact the defendant seeks to use in derogation of plaintiff's rights to the trade-mark "Nucoa" and in support of the defenses of noninfringement and no unfair competition. But, in view of the long prior use and registration by the plaintiff of "Nucoa" as a trade-mark for vegetable butter, neither the use by the plaintiff of that mark upon nut margarine nor the time of the beginning of such use is the criterion by which the scope of plaintiff's rights with respect to "Nucoa" are to be measured. It is provided by statute that the trade-mark rights of a person enable the owner to prevent the use by another of that mark, a counterfeit, copy, or colorable imitation thereof not only upon merchandise identical in all particulars with that upon which the mark has been used, but, as well, upon merchandise having substantially the same descriptive properties. Section 16 of Trade-Mark Act of 1905 (Comp. St. § 9501). The trade-mark of another may not be affixed to goods that are in some manner so intimately connected with the article that has borne the mark as to make not unreasonable a supposition or belief on the part of the purchasing

public that the same person or company or affiliated persons or companies are the manufacturers or vendors of both. Aunt Jemima Mills Co. v. Rigney & Co., 247 F. 407, 159 C. C. A. 461, L. R. A. 1918C, 1039 (C. C. A. 2); Anheuser-Busch v. Budweiser Malt Products Corp., 295 F. 308 (C. C. A. 2); Akron-Overland Tire Co. v. Willys-Overland Co., 273 F. 674 (C. C. A. 3).

The hard vegetable butter and the nut margarine are each derived mainly from the cocoanut. They are both food products. Each is a vegetable butter. In my opinion they have the same descriptive properties and are, likewise, so related in their uses as to bar the defendant from affixing any mark upon its nut margarine that is a colorable imitation of "Nucoa," the trade-mark for plaintiff's hard vegetable butter. An unavoidable corollary of this conclusion is that the use of "Troco" as a trade-mark for nut margarine by a third person for more than a year before plaintiff used "Nucoa" as a trade-mark for its nut margarine is a fact that is without pertinence to the issues of this cause, save to the extent that that fact may be evidence of an abandonment by the plaintiff of its rights. This the defendant urges. It asserts that the use of the suffix "coa," "co," and "ko" by other margarine manufacturers has been so persistent, continued, and adverse that the plaintiff must be held to have abandoned any exclusive right to the use of the word or syllable "coa." In support of this position the defendant has produced evidence showing the use and registration of trade-marks containing one of those syllables. That evidence reveals the use of "coa" as a suffix in three instances—in "Nucoa" by the plaintiff, in "Pecoa" by Wilson & Co., and in "Milcoa" by the defendant. In a suit instituted by the plaintiff a preliminary injunction was granted enjoining the use of "Pecoa." Upon an appeal that order was affirmed. Wilson & Co. v. The Best Foods, Inc. (C. C. A.) 300 F. 484. Registrations by others of marks containing the syllable "co" or "ko" are "Troco" in November of 1916, "Vegaco" in September of 1917, "Alco" in January of 1918, "Econut" in August of 1918, "Deconut" in July of 1919, and "Keyko" in October of 1920. There is evidence of the adoption by third persons, without registration, of "Kokohart" late in 1917, "Kokobrand" in 1918, and "Tropiconut" in 1919. The quantity of nut margarine upon which the marks containing the syllables "co" and "ko" were affixed is not shown to have been great.

[4, 5] If it be assumed (though it is not

here decided) that every use of "co" or "ko" in the marks of others is pertinent evidence upon the question of abandonment by the plaintiff of "coa," yet, in my opinion, that evidence is wholly inadequate to establish abandonment. To establish a defense of abandonment it is necessary to show not only acts indicating a practical abandonment, but an actual intent to abandon. Saxlehner v. Eisner & Mendelson Co., 179 U. S. 19, 21 S. Ct. 7, 45 L. Ed. 60. Actiengesellschaft, etc., v. Amberg, 109 F. 151, 48 C. C. A. 264; Taylor v. Carpenter, Fed. Cas. No. 13,784. I think the evidence discloses neither.

The defendant likewise seeks to make use of the words that have been employed as nut margarine trade-marks and of the duplicated sound of "coa" in "cocoa" or "cocoanut" to establish that "coa" is descriptive and indicates the cocoanut. It would then apply the rule that where a trade-mark consists of a word one part of which is descriptive and not subject to exclusive appropriation, while the other is purely arbitrary, the appropriation by another of the descriptive part only is not an infringment. Feil v. Robbins Co., 220 F. 650, 136 C. C. A. 258; Valvoline Oil Co. v. Havoline Oil Co. (D. C.) 211 F. 189. It is not shown, however, that the dictionaries or other books of reference anywhere define "coa" as meaning or describing the cocoanut. Moreover, it would seem, upon principle, that "coa" is no more descriptive of "cocoanut," the large, hard-shelled nut of the cocoanut palm, than it is of "cocoa," made from the seeds of the chocolate tree. The arbitrary words containing the syllable "coa," "co," or "ko" adopted as trade-marks for nut margarine are not, I think, by reason of their spelling, sound, or pronunciation, sufficient of themselves, or when considered in the light of the spelling or pronunciation of "cocoanut," to establish that "coa" as used by the plaintiff in "Nucoa" is descriptive and, consequently, appropriable by the defendant.

[6, 7] The defendant next asserts that there is no infringement by it unless the resemblance of "Milcoa" to "Nucoa" is sufficient to convey a false impression to the public mind and is of a character to mislead and deceive the ordinary purchaser in the exercise of ordinary care and caution in such matters; that the mark "Milcoa" has been extensively used since the fall of 1920; that there is no evidence whatever that any person has been so deceived or purchased "Milcoa" supposing it to be "Nucoa"; and that, consequently, the court should not now determine abstractly whether the similarity

is such as is calculated to deceive. The question thereby raised is, however, not new. It is expressly dealt with in Nims on Unfair Competition and Trade-Marks, pp. 601, 602. It is there said: "The fact that no actual cases of confusion are proved is not conclusive on the court. Regardless of proof of this sort it must decide on the facts as to the marks used by the parties and on the evidence of the market conditions surrounding the everyday use of the marks whether or not the defendant's acts will be likely to cause confusion." I do not find that this statement of the law has been at any time successfully challenged. Hence, we must now pass to the solving of the problem of whether or not the degree of resemblance of "Milcoa" to "Nucoa" is such that the ordinary purchasers of nut margarine buying with ordinary caution are likely to be misled; that is, whether or not "Milcoa" is a colorable imitation of "Nucoa."

This is a question of fact to be determined with regard to the circumstances of the particular case. Payton & Co. v. Snelling, Lampard & Co. (1901) App. Cas. 308–310. Nut margarine is sold in small or pound cartons. It is a butter substitute. The retail prices disclosed by the record have been 25–28 cents. In Wirtz v. Eagle Bottling Co., 50 N. J. Eq. 164, 169, 24 A. 658, the New Jersey Court of Chancery held it to be a matter of common knowledge that the ordinary buyer does not, as a general rule, exercise as much caution in buying an article for which he pays a few pennies as he does in purchasing a more valuable thing. Moreover, the test of colorable imitation is, not whether a difference may be recognized between the marks of two competing articles when placed side by side, but whether the difference will be recognized by the purchaser when not having the opportunity for comparison. McDonald v. Mueller, 183 F. 972, 106 C. C. A. 312. The similarity is deceptive when it is such that the average buyer, in the exercise of ordinary care and caution in the purchase of such an article, is unable to distinguish the defendant's name or mark from his mental picture or recollection of plaintiff's mark. The test is not visual comparison, but is memory comparison. Nims on Unfair Competition and Trade-Marks, pp. 583 and 588, 589. It has been held that confusion would result from the use of "celluloid" and "cellonite," Celluloid Mfg. Co. v. Cellonite Mfg. Co. (C. C.) 32 F. 94; from "chatter book" and "chatter box," Estes v. Leslie (C. C.) 29 F. 91; from "roof leak" and "never leak," Elliott Varnish Co.

v. Sears, Roebuck & Co. (D. C.) 221 F. 797; from "ramopa" and "maropa," Ramopa Co. v. A. Gastun Co., Inc. (D. C.) 278 F. 557.

At the suit of the plaintiff the federal District Court in Nevada granted a preliminary injunction enjoining the use of the mark "Pecoa." The Court of Appeals held that the discretion of the trial judge had not been abused. Wilson & Co. v. The Best Foods, Inc. (C. C. A.) 300 F. 484. I think "Milcoa" is neither less nor more confusing than "Pecoa," but independently of the "Pecoa" decision I think "Milcoa" is, in legal contemplation, a colorable imitation of "Nucoa" and, consequently, an infringement.

The plaintiff charges that the defendant and its predecessor in title have been guilty of acts of unfair competition other than simulating plaintiff's trade-mark. It asserts that the order cards of the plaintiff have been copied literally. Such cards are used, however, not by the ultimate consumer, but by the dealers. They know the names of the persons with whom they deal and the trade-marks of the goods which they sell or desire to sell, and are not so apt to be confused. Moreover, I am not convinced by the evidence that the order cards sent out by the plaintiff and defendant alike were other than of a standard design.

I do not find that the charge of unlawful and fraudulent imitation of plaintiff's slogans or advertising has been sustained.

Plaintiff likewise charges that defendant's carton or dress was similar to that of the plaintiff and that it is calculated to deceive. With this contention I am wholly unable to agree. I see no similarity whatever save in shape and size, but with respect to these plaintiff has no monopoly.

[8] I find no unlawful act in the conduct of the defendant or of its predecessor save in the incorporation in their trade-mark of the syllable "coa." It may be that the defendant and its predecessor truly believed that "coa" was descriptive, and that, consequently, neither was guilty of any fraudulent intent in the use of "Milcoa." But, as said by the Irish Master of the Rolls in De Kuyper & Son v. Baird, 20 R. P. C. 581, "The effort of an honest man, anxious to commend his own goods on the ground of quality or cheapness, or both, ought to be to brand them with a mark as unlike as possible to other brands, which have their own value, instead of trying to go as close as he can with legal impunity in the way of imitating them." Unfortunately, the defendant and its predecessor did not brand their goods with a mark wholly unlike that of the plaintiff. While I am not convinced that the similarity of "Milcoa" to "Nucoa" was the result of an actual fraudulent intent, it was nevertheless a trespass upon plaintiff's rights. I do not find that plaintiff's right to injunctive relief is barred by laches. But the plaintiff's delay in notifying defendant's predecessor, the bona fide transfer for a valuable consideration of the business and good will of defendant's predecessor to the defendant, the continued efforts to build up the business of the sale of defendant's nut margarine under the name "Milcoa," and the failure to bring this suit until the 17th day of September, 1923, although the use of "Milcoa" as a trademark for nut margarine had been begun in the fall of 1920, are sufficient, I think, to bar the plaintiff's right to an accounting. Nims on Unfair Competition and Trade-Marks, pp. 703, 704.

An injunction to prevent the further deceptive use by the defendant of "coa" on its nut margarine must be decreed.