CHARLES CONRAD, Respondent, *v.* JOSEPH UHRIG BREWING COMPANY, Appellant.

February 3, 1880.

1. Where a label adopted by a merchant to designate goods manufactured by him, and for which he had built up a large trade, has been simulated by another merchant, placed upon inferior goods, and put upon the market, an action in the nature of an action for deceit will lie, at the suit of the former.

2. Specific damages need not be shown in such a case, but the jury may assess such damages as they may, on the whole evidence, be satisfied has been sustained.

3. That the label bears a name the use of which could not in equity be protected as a trade-mark, will not prevent a recovery, where the label is imitated in size, shape, color, device, and general appearance.

4. Where the words in a label adopted as a trade-mark are substantially true, and contain nothing calculated to deceive the public, that they are not literally true will not deprive the merchant of the protection of the law.

APPEAL from the St. Louis Circuit Court.

*Affirmed.*

EVERETT W. PATTISON and RUDOLPH SCHULENBURG, for the appellant : The combination used is not valid as a trade-mark ; and an action at law will not lie for the infringement of a label. — *Falkenburg* v. *Lucy*, 35 Cal. 52 ; Browne on T.-M., sect. 137. The plaintiff's label or trade-mark contains a misrepresentation calculated to deceive the public, and is not entitled to protection. — *Fetridge* v. *Wells*, 4 Abb. Pr. 144 ; *Pidding* v. *How*, 8 Sim. 479 ; *Perry* v. *Truefitt*, 6 Beav. 66 ; *Partridge* v. *Mench*, How. App. Cas. 547 ; *Phalon* v. *Wright*, 5 Pa. 464 ; *Leather Co.* v. *American Co.*, 1 Hen. & M. 271 ; *s. c.* 10 Jur. (N. s.) 82 ; *s. c.* 11 H. L. Cas. 533 ; *Morgan* v. *McAdam*, 36 L. J. (N. s.) Ch. 228 ; *McAndrew* v. *Bassett*, 10 Jur. (N. s.) 550 ; *Hobbs* v. *Francais*, 19 How. Pr. 567 ; *Palmer* v. *Harris*, 60 Pa. St. 156 ; *Hagerty* v. *Shine*, 7 Cent. L. J. 291 ; *s. c.* 8 Cent. L. J. 111 ; *Stockdale* v. *Onwhyn*, 7 Dow. & R. 625 ; *Ford* v. *Foster*, 7 Ch. App. Cas. 626. There was no infringement ; the defendant had the same right as the plaintiff to manufacture the beer and use the name. — *Gillett* v. *Esterbrook*, 47 Barb. 465 ; *Casswell* v. *Davis*, 58 N. Y. 223 ; *Thomson* v. *Winchester*, 19 Pick. 216 ; *Davis* v. *Kendall*, 2 R. 1. 566 ; *Lazenby* v. *White*, 41 L. J. (N. s.) Ch. 354 ; *Canham* v. *Jones*, 2 Ves. & Bea. 218 ; *Candee* v. *Deere*, 54 Ill. 439, 461. Fraud is of the very essence of an action at law for violation of a trade-mark. — Browne on T.-M., sect. 458 ; *Blanchard* v. *Hill*, 2 Atk. 484 ; *Crawshay* v. *Thompson*, 4 Man. & G. 357 ; *Rodgers* v. *Norvill*, 5 C. B. 109 ; *Edelstein* v. *Edelstein*, 1 De G. J. & S. 185, 199. Damages. — *Squier*

v. *Gould*, 14 Wend. 159 ; *Strong* v. *Whitehead*, 12 Wend. 64 ; *Johnson* v. *Robertson*, 8 Port. 486 ; *Shipman* v. *Burrows*, 1 Hall, 399 ; *Croft* v. *Boite*, 1 Saund. 241, 243, note 5.

R. E. ROMBAUER and FINKELNBURG & RASSIEUR, for the respondent : There was here such an appropriation by the defendant of the mark, symbol, or device of the plaintiff as will enable the latter to maintain an action against the former for violation of trade-mark. — *Croft* v. *Day*, 2 Beav. 84 ; *Popphaus* v. *Wilcox*, 14 Abb. Pr. (N. S.) 206 ; *Sohe* v. *Geisendorf*, 1 Wils. (Ind.) 60 ; *Filley* v. *Fassett*, 44 Mo. 168–178 ; *Brown* v. *Mercer*, 37 N. Y. Superior Ct. 265 ; Browne on T.-M., sects. 385, 386. While geographical and generic terms in themselves cannot be appropriated as a trade-mark, yet they will be entitled to protection when used in connection with other symbols and devices, as a trade-mark, against one who uses the same terms in connection with the same devices and similar symbols, and with intention to deceive. — *Briminger* v. *Waattles* 28 How. Pr. 206 ; *Newman* v. *Alvord*, 49 Barb. 588 ; *Lea* v. *Wolf*, 1 N. Y. Superior Ct. 626 ; *Lead Co.* v. *Massury*, 25 Barb. 416 ; *Coffin* v. *Brunton*, 4 McLean, 516 ; *Knott* v. *Morgan*, 2 Keen, 213 ; *McAndrew* v. *Bassett*, 10 Jur. (N. S.) 550. There was here no such intentional or material misrepresentation by the plaintiff as will deprive him of protection. — *Smith* v. *Woodruff*, 48 Barb. 438 ; *Curtis* v. *Byran*, 36 How. Pr. 33 ; *Fettridge* v. *Merchant*, 4 Abb. Pr. 156 ; Browne on T.-M., sects. 492, 493 ; *Stewart* v. *Smithson*, 1 Hilt. 119. Damages. — *Graham* v. *Plate*, 40 Cal. 593 ; *Peltz* v. *Eichele*, 62 Mo. 171 ; *Marsh* v. *Billings*, 7 Cush. 322 ; *Taylor* v. *Carpenter*, 2 Woodb. & M. 1 ; Browne on T.-M., sect. 503.

BAKEWELL, J., delivered the opinion of the court.

This is an action in the nature of an action of deceit, for damages for using what the plaintiff in his petition claimed

as his trade-mark. The answer was a general denial. There was a verdict and judgment for plaintiff for $4,175.

It appears that plaintiff had been for many years engaged in the wine and liquor business in St. Louis, on a large scale, under the trade name of C. Conrad & Co. For nearly two years before the institution of this suit he had been putting up an excellent quality of beer, which he had, at great expense, introduced to the trade; and which was very favorably received in other cities, particularly in California and Texas. Budweis is a small town in Bohemia, where very good beer is made, and as plaintiff, who is not a brewer, seems to have believed, by some peculiar process. It appears, however, that the Budweiser process of making beer is not peculiar to Budweis. The beer which plaintiff put up was manufactured for him by Anheuser & Co., a large brewing house in St. Louis. The directions of Conrad were that it should be brewed of imported hops and barley. It was brewed altogether from the best imported hops, which were imported and furnished for that purpose to Anheuser & Co. by Conrad himself. These imported hops are superior to any American hops. The barley was not imported; but it was the best, carefully selected American barley, and as good as any foreign barley. In brewing, the mash is prepared by infusion, or by decoction, or by a process in which the two modes are combined. In Budweis, the mash is prepared by infusion; and this beer is so prepared. It costs to prepare it about two dollars a barrel more than the ordinary beer manufactured by Anheuser & Co., and is a better beer; and is described by the experts examined as being an uncommonly good beer — a hop beer, of good color, bright and inviting in appearance. Conrad testifies that he has a peculiar process of bottling his beer, which is his secret, and which improves the beer. The defendant claims, and Uhrig swears, that the Conrad method of bottling is the same used by defendant, and is a known European process. For the purpose of protecting his interests,

Conrad employed a lithographer to get up a peculiar label. This label is somewhat in the shape of a necktie. In the centre are three C's; on each flap is a peculiarly shaped crown, wreathed with barley and hop-leaves. The words on the label are: "We guarantee that this beer is brewed especially for our own trade, according to the Budweiser process, of the best Saazer hops and Bohemian barley, and warranted to keep in any climate. Take notice that all our corks are burned with our trade-mark. The world-renowned Budweiser lager-beer. Trade-mark. Australia, Europe, Asia, Africa, America." Conrad considered that he had bought this design. The engraver says that he did not understand that Conrad bought the design: that the stone still belonged to the engraver. Defendant manufactured an inferior and cheaper beer. After plaintiff's beer had acquired a reputation, the president of defendant procured from the same engraver a label of the same size, shape, and color, and having the same general appearance and the same peculiar devices of a crown and wreaths. Examination would show that the two labels were not the same; but the retail purchaser would readily take one for the other. On defendant's label were three B's, and the following words: "Caution! See that our corks are burned with our trade-mark. Beware of imitation. The world-renowned Budweiser lager-beer. Trade-mark." There was testimony to the effect that purchasers did actually mistake one label for the other; and it is evident, from inspection, this must have been the case. The Uhrig label was calculated to deceive. Defendant also put up his beer in bottles of the same color and appearance as those used by plaintiff. There is testimony to the effect that when the president of defendant ordered the labels, he directed that they should be made with a difference, so as to avoid either a lawsuit or a quarrel. There was testimony tending to show that the president of defendant, before ordering these labels, visited the manufactory of plaintiff, whilst plaintiff was ab-

sent from the State; and that the travelling agent of de-fendant told plaintiff's agent that he had telegraphed to defendant's president to put on a similar label, and to make the Uhrig beer look like Conrad's beer. This testimony was admitted against defendent's objection. There was also testimony that the same travelling agent of defendant told another agent of plaintiff that they intended to put the Budweiser labels on bottles. Plaintiff's beer was so popular that his sales gradually rose from $24,000 the first year to $96,000 in the six months immediately preceding the trial. He had spent over $12,000 in introducing his beer, and several thousand dollars in trying to counteract the injury done to his trade and reputation by the Uhrig beer sold under the simulated label. The Uhrig beer was sold much cheaper, and necessitated, in some cases, a reduction of price on plaintiff's part; its inferior quality also injured the reputation of the C. C. C. beer, as the one was taken for the other.

The right of a manufacturer to his own particular trademark is one that the law fully recognizes. The courts interfere, both to protect the manufacturer in his particular trade, and to guard the public against imposition. If the marks are so different that the ordinary buyer cannot be deceived, no wrong is done to the public; and if the mark complained of is not shown to have been adopted and used by plaintiff, so that his business is not injured by its use by another, there is no ground for the action of deceit.

It is contended in this case that the mark simulated was not a trade-mark, and that words "Budweiser Lager-Beer" could not be a trade-mark. It is not important to this case to determine whether the device simulated is technically to be called a trade-mark or a label, nor is it important that the words "Budweiser Lager-Beer," by themselves alone, could not be used as a trade-mark. The entire device simulated was that which had been adopted by a merchant to designate goods manufactured for him, and under his direction, and sold by him; the device was adopted by him

to distinguish his goods from those of another ; he had introduced his goods extensively under the designation which he had thus adopted, and was entitled to the exclusive use of the label which he had thus adopted as a trade-mark to distinguish his goods. *Burke* v. *Cassin*, 45 Cal. 467.

Let it be granted that no one can have an exclusive property in the words " Budweiser Lager-Beer," and that all lager-beer made in any town called Budweis is properly so called. The injury done in this case by defendant to plaintiff was, not in calling the beer sold by defendant Budweiser beer, but in affixing to the bottles of defendant's beer a mark calculated to deceive the ordinary purchaser into the notion that the bottled beer of Uhrig was the article so carefully prepared by Conrad, by whatever name it might be called.

The owner of goods which he exposes to sale in market in his own right, is entitled to the exclusive use of any trade-mark devised and applied by him to distinguish them as being of a particular manufacture or quality, although he is not himself the manufacturer. *Walton* v. *Crowley*, 3 Blatchf. 440.

It is contended that the law can afford no protection to plaintiff, because his so-called trade-mark or label was in itself a misrepresentation. This beer, it is said, was not Budweiser beer. That it was not Budweiser beer, in the sense that it was not made in Budweis, is true. Neither was it imported beer. But it does not appear that it was held out to the public either as actually made in Budweis or as a foreign article. The statement on the label explains that it was not made at Budweis, but by the Budweiser process. Whether there was anything peculiar to Budweis about this process or not, it seems that this beer was really made as beer is made in Budweis — of the best barley and hops, and with the same preparation of the mash.

The label states that it was made of the best Saazer hops and imported barley. If this was not literally true, the

testimony is that it was a distinction without a difference. Imported hops exclusively were used. There were frequently other hops, but they were always of the same excellent quality as Saazer hops, and of the same peculiar properties, and were always imported hops. The barley was not imported ; but a select quality of American barley, equal to imported barley, was always used. There was no testimony tending to show any imposition upon the public by plaintiff. The testimony is that the public was furnished by him with an excellent quality of beer, made of imported hops and of barley equal to any to be found in Europe or America. This beer was made specially for plaintiff, according to his directions. To simulate the label under which he was selling this beer, and, under the simulated label, to put off an inferior quality of beer upon the public as the same which had acquired a reputation under the Conrad label, was a fraud at once upon the public and on Conrad, for which he had an action.

The imitation of the label was a false representation that the goods to which it was attached were manufactured or sold by the person whose label was imitated ; and there was evidence that persons were deceived thereby, and that the public was thus defrauded. The variety of cases in regard to trade-marks, as is remarked by Judge Robertson in *Corwin* v. *Daley*, 2 Bosw. 224, grows out of the various ingenious means used by traders to defraud each other, and to represent, without appearing to do so, that the articles dealt in by one are those of another. It was not a question in this case whether the words " World-renowned Budweiser Lager-Beer," used by themselves, without the other devices shown in this case can be a trade-mark, and whether a court of equity would, on the testimony in this case, enjoin their use. Others might, perhaps, employ these words with truth, and honestly. But no one could honestly adopt, for beer in bottles like the bottles used by plaintiff, the label which defendant is shown to have used, if it so closely sim-

ulated the label of plaintiff as to be readily taken for it when placed upon a bottle like the bottles which plaintiff used. The resemblance between the labels was not accidental. It was manifestly for a purpose. There was deceit and consequent damage; and there was evidence to support the verdict. *Brown* v. *Mercer*, 37 N. Y. Superior Ct. 265; *Boardman* v. *Britannia Co.*, 35 Conn. 402.

It is not necessary to set out the instructions given or refused. The case was put to the jury on a theory as favorable to defendant as he could ask. If the views of the law of the case which we have expressed are correct, the instructions refused were properly refused.

Some objections were saved to the admission and exclusion of evidence, but in this we see no material error to warrant a reversal of the judgment.

As to the damages, the facts present a case of fraud on plaintiff and violation of his rights for which the action lies without proof of specific damages; and, the jury having found for plaintiff, he was entitled to such damages as the jury, on the whole evidence, should be satisfied he had sustained. And the damage was not confined to the loss of such actual sales as could be specifically shown to be lost, but the jury might make such inferences as to the loss and injury sustained by plaintiff as they might think warranted by the whole evidence in the case. *Marsh* v. *Billings*, 7 Cush. 322. We do not think the damages were excessive.

The judgment is affirmed. Judge LEWIS is absent; Judge HAYDEN concurs.