## ANHEUSER–BUSCH BREWING ASS'N v. FRED MILLER BREWING CO.

(Circuit Court, E. D. Wisconsin. June 13, 1898.)

TRADE-MARKS AND TRADE-NAMES—UNFAIR COMPETITION.

The mere use of a geographical name, in which there can be no technical trade-mark, unaccompanied by any imitation of labels, or other indicia, may constitute unfair competition, when adopted for the purpose of taking away another's business and good will.

This was a suit in equity by the Anheuser-Busch Brewing Association against the Fred Miller Brewing Company to enjoin the use of a trade-name.

Rowland Cox and Hugh Ryan, for complainant.

E. F. H. Goldsmith and N. Pereles &' Sons, for defendant.

SEAMAN, District Judge. The bill seeks to enjoin the defendant from using the name "Budweiser" as the designation of a brand or brew of beer manufactured by it; and no ground for re-

lief is established by the testimony, unless it may be found within the equitable doctrine relating to unfair competition in trade. Although it is undisputed that this designation has been employed by the complainant and its predecessor in business, for about 20 years, as the name of a special manufacture of beer, for which wide reputation and extensive trade has been obtained throughout this country and abroad, the name is distinctively geographical (referring to a place in Bohemia, Austria, called "Budweis"); and it is both conceded and indisputable that this use confers no property right or monopoly in such name, as a trade-mark. On the other hand, the allegations on the part of the complainant, that it has thus established a business and good will in the sale of Budweiser beer, of great extent and value, are well supported, and not controverted. There is, however, no foundation for the further allegation that the beer manufactured and sold by the defendant under this name is of an inferior quality, or "an ordinary American beer," and there is no testimony which even tends to impugn its actual quality as a beverage. Nor is the name or place of the defendant, as the manufacturer of its Budweiser, in any manner disguised, nor is there simulation of the appearance of complainant's bottles or labels in those now used by the defendant, to constitute on their face a means to palm off the article upon the public as the actual production of the complainant, except so far as the name "Budweiser" is used, and is identified as exclusively of its production. So that no case is presented which is literally within the well-settled line of authorities in respect of such impositions upon the public, nor is it brought directly within the rule stated in the recent and well-considered opinion of Judge Bunn, speaking for the circuit court of appeals, in Flour-Mills Co. v. Eagle, 86 Fed. 608, relating to false pretense as to the place of manufacture, as neither the complainant nor the defendant is located in Budweis, and neither holds forth a pretense of such location, in any respect. The purport of the name, as asserted by each, is to designate this brand of beer as made "according to the Budweiser process," namely, that in the ingredients and brew it conforms to the special production of beer at Budweis. Therefore the issue is purely one of a fraudulent appropriation of this name, without foundation in fact, under circumstances which both intend and cause imposition, to the injury of the complainant's business and good will. With no property right existing in the name "Budweiser," it is clear that the defendant cannot be precluded from using it to designate its special brew, if necessary for accurate description, or even if such use is "truthful," as alleged in the answer, and is also honest and ingenuous. But if the manufacture of beer was not of such character as to make this name specially applicable, and it was selected arbitrarily, and for the purpose of taking advantage of the established reputation of the complainant's Budweiser, and with the effect of disturbing its trade therein, such use constitutes unfair competition,—is "unfairly stealing away another's business and good will."—and must be regarded, in equity, as fraudulent. As remarked in Thread Co. v. Armitage, 67 Fed. 900:

87 F.—55

"This good will is the complainant's inheritance, and its property. It is as much a part of its assets as its mill or its counting house. No one has a right to destroy it, except by fair and honest competition."

In Conrad v. Brewing Co. (decided in 1880) 8 Mo. App. 277, there was a strong adjudication in favor of the complainant's predecessor, respecting a fraudulent use of this particular trade-name. While no other case of the numerous citations by counsel can be said to pass upon the question in the form here presented, I am of opinion that the proposition above stated, as to fraudulent use of a name which would otherwise be open to all users, is clearly within the uniform line of decisions in equity, distinguishing honest competition from that which is unfair and illegitimate, and granting relief against devices and means of the latter class which cause imposition, whatever the form. In this view of the law, the facts, so far as material to the controversy, are well established, by admissions, and by testimony which is practically undisputed, as follows:

1. The predecessor of the complainant, Mr. Conrad, commenced the manufacture of a beer of distinctive character and excellence about the year 1876, through Anheuser & Co., as brewers. This product was originally made of materials, imported for the purpose,. similar to those used in a certain brewery at Budweis, and by the same process which was there employed; and the beer so produced was thereupon named "Budweiser," constituting the first adoption of such title for any manufacture of beer in this country. If the beer made at the Budweis brewery was ever brought to this country in any quantity, either under the name of "Budweiser," or other designation, it is not shown by competent evidence; and the only inference which can be drawn from the testimony in that regard is that the name was introduced and became known to the trade in this country solely through this St. Louis production. As to the name by which the original manufacture at Budweis was known, the defendant introduced, without proper identification, and under objection, a label which shows the name "Budweiser Beer" on a purported importation in New York from Budweis; and a witness who formerly resided at Budweis states that two grades of beer were produced there, one of which was known as "Budweiser Common Beer," and the other as "Budweiser Lager Beer." The label was clearly insufficient for any purpose, and the testimony as to local name, if otherwise satisfactory, cannot affect the present inquiry. The main ingredients which were peculiar to this beer, as originally made, were (1) Saazer hops, (2) a fine quality of Bohemian barley, supplemented by (3) Bohemian pitch, and (4) Bohemian yeast; the latter two imparting, as claimed, peculiar flavor and quality. The details of the process are not disclosed, for reasons which are probably justifiable, but it is positively asserted that the brew uniformly conforms to the Budweis process; and sufficient facts appear to show that it is, on the whole, distinctive as a process.

2. The complainant, as successor to the brewers, Anheuser & Co., and by transfer from Conrad, subsequently continued the manufacture on its own account, following strictly the same process and care, and employing the same material, except that the finest quality

of American barley, either Canadian or domestic, selected for the purpose, is stated to have taken the place of the imported article after the first year or two, because it was found that equal or superior quality could thus be obtained, while the beer retained its distinctive character, and resemblance to the original Budweis production, unaffected by such change. This substitution appears to have been recognized on the labels, by stating the use of the "finest barley," in place of the previous wording, "Bohemian barley."

3. The beer thus produced was of distinctive character, especially in its light color and its flavor, and it appears that such distinction has been uniformly maintained from the outset. Under the name of "Budweiser," it attained popularity and extensive market, throughout the United States, at least, during the introductory term of Conrad; and in the hands of the complainant the trade and celebrity became greatly extended. Although other brands of beer were manufactured by the latter at their great plant in St. Louis, the testimony shows that Budweiser was the production for which they were generally known elsewhere, was practically and substantially their exclusive possession by way of good will, and, through advertising and trade, has constituted the main ground and token of such celebrity as has been attained by the complainant in this country and abroad,—to some extent, at least, overshadowing the name of the brewers, so that, as stated by the president of the company, he is "very often greeted as Mr. Budweiser, instead of Mr. Busch." In other words, the production is known rather by its name, "Budweiser," than by the name or place of the brewers, and in this they have a good will of great value.

4. The defendant entered the field in 1891 with a new brew of beer, of special excellence, and closely resembling that of the complainant, especially in the light color. To some extent, at least, it became a rival of complainant, but thus far was clearly within the rights of the defendant, and entitled to encouragement. The adoption, however, of the name for this new production, presents a different aspect, as the intention is manifest, in the light of the circumstances and testimony. It was not called "Budweiser" in good faith, and ingenuously. The name was no more applicable to this special brew, if applicable at all, in strict sense, than many others which were open for selection, and its value for the purpose rested in the use and popularity made for it by the efforts of complainant; but it appears to have been the object of the christening to take the benefit of the reputation so established in the United States, or in the territory sought by the defendant, for beer so named, of like appearance and quality, and in that guise to invade the complainant's trade by unfair competition. In 1890 and 1891, just prior to this new venture, the defendant was carrying on the agency or business of selling the complainant's Budweiser beer to the customers of the latter in the Lake Superior territory,—presumably, in connection with the sales by defendant of its own brews, which were different in their appearance and character. A letter from the defendant to the complainant, dated January 22, 1891, speaks for itself as to the introduction of the new beer, in answer to an

inquiry regarding rumors that the former designed "giving up handling" the Budweiser of the complainant. It reads:

"Permit us to say that thus far we haven't any such intention. On the contrary, we purpose to sell your Budweiser bottled beer so long as there is but a little profit in it. You have certainly been misinformed on this point."

Following this, the defendant proceeded to make its new brew of so-called "Budweiser," with which it entered the same market so held for and through the complainant, with bottles and labels in obvious departure from those previously used for ·its own production, and in which there were then marked points of similitude to those of complainant, although since discarded. And the attempted explanations on behalf of the defendant as to the reasons for selecting this name tend to confirm the view I have indicated, rather than an ingenuous choice, as argued on behalf of defendant.

5. The answer of the defendant distinctly "alleges that it applied said designation 'to beer brewed according to the Budweiser process in order to designate the manner of brewing said beer, and to show its quality"; but the testimony introduced on its behalf denies the fact of any such distinctive process, and explains that the reference in the answer was to the general European process which prevails in Vienna, Berlin, Pilsen, and elsewhere; being "a different process than that in America," and not applicable to Budweis distinctively, because, as stated by Mr. Miller, there is no "such thing known in the brewing world as the 'Budweiser process.' " Therefore the attempted justification of truthful use of the name clearly fails. On the other hand, the denials of the existence of such process are not founded upon personal knowledge, and are entitled to no weight as against the positive testimony on the other side. Assuming a belief on its part that there was no Budweiser process, the defendant committed a wrong in adopting the name, under the circumstances. With the process existing as shown on behalf of the complainant, the defendant neither conforms to it in fact, nor attempts conformity, and the name is not truthfully applied. In either view, the bill must be sustained.

The objection by defendant to the testimony introduced by complainant in rebuttal does not seem to be well taken, if material. The other objections are also overruled, and decree will be entered for complainant in accordance with this opinion.