**ANHEUSER–BUSCH, Inc., v. DU BOIS BREWING CO.**

Civ. No. 869.

District Court, W. D. Pennsylvania.

Sept. 9, 1947.

Decree for the plaintiff.

See also D.C., 3 F.R.D. 336.

Alter, Wright & Barron, of Pittsburgh, Pa. (Wallace H. Martin, Walter J. Halliday, Marion L. Severn and Nims, Verdi & Martin, all of New York City, Alexander J. Barron and James Milholland, both of Pittsburgh, Pa., and Shepley, Kroeger, Fisse & Ingamells, of St. Louis, Mo., of counsel), for plaintiff.

Reed, Smith, Shaw & McClay, of Pittsburgh, Pa., and Bell & Brockbank, of Du Bois, Pa. (Elder W. Marshall, John C. Bane, Jr., and Sherman T. Rock, all of Pittsburgh, Pa., of counsel), for defendant.

GIBSON, District Judge.

By the present action the complainant seeks to enjoin the defendant in the use of the common law trade-mark which plaintiff claims in the word "Budweiser" to identify it's manufacture of beer and other related products.

In the year 1876 one Carl Conrad, a dealer in malt and other beverages in Saint Louis, put out a beer which he called "Budweiser", and which was manufactured for him by the predecessors of the plaintiff. This beer was in imitation of beer manufactured in Budweis, an old city in Bohemia, which Conrad and plaintiff's predecessors considered to be of a high quality. The beer was first put out as the product of Conrad and as such obtained a very considerable, although largely local, popularity. In 1883 Conrad gave the plaintiff a qualified right to put out this beer in the name of the plaintiff's company as then constituted, and later conveyed, by agreement in 1891, all his rights in the product, its trade marks and trade names.

After the plaintiff acquired the right to put out "Budweiser" in it's own name, it advertised the product in numerous newspapers and magazines and otherwise in the United States, and as a result "Budweiser" beer soon became known and widely sold throughout this country.

In 1905 the defendant began the manufacture of a beer which it called "DuBois Budweiser". In color it was an imitation of plaintiff's product, both beers being light yellow or strawcolored in similarity to those commonly brewed in Bohemia, and known in this country as "Pilsener" beers. Before making this "DuBois Budweiser" the defendant had operated a brewery for a number of years. In putting out it's "DuBois Budweiser", along with several other beers and malt liquors brewed by it, it's bottles were of a different color and form and had a different design on the labels than the bottles of "Budweiser" marketed by Anheuser-Busch.

Just why the DuBois Brewing Company used the term "Budweiser" in describing its new beer seems reasonably obvious. It is alleged that the then president of the com-

pany, on a visit to Germany, had drank some of the beer brewed in Budweis, and considered it of high quality, and his opinion led to his naming the beer. It is quite possible that this allegation is true; but when it is remembered that the city of Budweis had only two breweries, one of medium size and the other small, and that only a very small amount of beer from Budweis had been imported into a narrow eastern seaboard; and that not one in ten thousand of the desired purchasers of the new beer had ever heard of the beer brewed in Budweis, but probably each one of them knew of the "Budweiser" made by Anheuser-Busch, one may be pardoned for more than a strong suspicion that the extensive advertising and quality of the Anheuser-Busch "Budweiser" were not ignored in naming it. It is beyond dispute that the then president of the defendant and it's brewmaster had knowledge of the advertising, sales and consumption of Anheuser-Busch "Budweiser" prior to 1905.

The defendant has not undertaken to deny the wide exploitation of plaintiff's "Budweiser" except as to degree, but denies the right to the use of the term as an exclusive trade name.

■ It asserts that the word "Budweiser" is geographic and descriptive and that no individual is entitled to use such a term for its exclusive use. This contention needs some qualification. If A and B were manufacturers in the City of X, A from prior use alone could not claim X as his trade mark as against B as his use would be geographic. In the instant case neither plaintiff nor defendant is a brewer of beer in Budweis, nor is either of them selling a beer that is descriptive of a product brewed only in Budweis and known as such to the world. Each of the parties herein has used the word "Budweiser" only as a trade name.

■ The defendant further contends that Anheuser-Busch had no exclusive right to the word "Budweiser" in 1905 when it was first used by defendant.

It is true that beer from Budweis had been brought into New York in small quantities from about the time Carl Conrad put his "Budweiser" on the market in 1876. What it was termed in Budweis does not

appear, but the importer termed it "Budweiser", or beer made in Budweis. Other than this possibly contemporaneous use of the term Conrad and Anheuser-Busch had been considerably in advance of others who undertook to exploit it. At the present time all users of "Budweiser" as a trade name, other than the defendant, have been taken out of the picture by the plaintiff by means of legal actions, threats of legal actions or agreements. This was true in 1905 except as to the importer of "Budweiser" in New York and the Prospect Brewing Company of Philadelphia, which manufactured "Prospect Budweis Lager Beer" and which continued until the Prohibition Act and was ended by it. Also may be excepted one William Wirtz who bottled a "Budweiser Lager Beer" in Newark. The period he was in operation is somewhat uncertain, but he may have operated as late as 1905. Other than those mentioned all users of the "Budweiser" as a part of their trade name prior to 1905 were prevented from its further use. Some of the actions by which Anheuser-Busch or its predecessor obtained injunctions against alleged unfair users of the trade name, some of them prior to and some subsequent to 1905, are: Conrad v. Joseph Uhrig Brewing Co., 1880, 8 Mo.App. 277, Anheuser-Busch Brewing Ass'n v. Fred Miller Brewing Co. 87 F. 864; Anheuser-Busch, Inc. v. Budweiser Malt Products Corporation, D.C.1921, 287 F. 243 and 2 Cir., 1923, 295 F. 306; Anheuser-Busch v. Cohen, D.C.1930, 37 F.2d 393. These cases are cited to show that the plaintiff has asserted its right to the trade name "Budweiser" against various alleged infringers, and not as proof of the facts asserted in the opinions.

■ After Anheuser-Busch had extensively advertised its product and had secured a distribution in all sections of the United States, a number of brewers attempted to take advantage of the situation by putting "Budweiser" in their trade names. A trade name which has been used to the extent that it indicates to the general public that all goods bearing it are the manufactures of the original user, cannot be taken away by infringers. To give title to such a name the claimant must show that it has been long and continuously used, but

not necessarily to the absolute exclusion of all others. If its use has been substantially exclusive and so that the general public recognizes it, the trade mark is good. That absolute exclusive use is not necessary is recognized by the Trade Mark Act of July 5, 1946, 15 U.S.C.A. § 1052 Paragraph 2(f) of which follows: "(f) Except as expressly excluded in subsections (a), (b), (c), and (d) of this section, nothing in this chapter shall prevent the registration of a mark used by the applicant which has become distinctive of the applicant's goods in commerce. The Commissioner may accept as prima facie evidence that the mark has become distinctive, as applied to the applicant's goods in commerce, proof of substantially exclusive and continuous use thereof as a mark by the applicant in commerce for the five years next preceding the date of the filing of the application for its registration".

■ It is asserted that the method by which the defendant put its beer on the market precluded any confusion by the public between it and the Anheuser-Busch beer. Defendant's beer was put out in an uncolored glass bottle, whereas the plaintiff's beer was in a colored glass bottle. The label on it's bottles had a different design and color than was borne by plaintiff's bottles, and each label was marked: "Original DuBois Budweiser Beer" and declared that the contents of the bottle had been manufactured by "The DuBois Brewing Company, DuBois, Pa." Defendant asserts that it, having so distinguished its beer from plaintiffs, is entitled to retain the "Budweiser" part of its trade name.

When a geographic or descriptive name has been adopted by a manufacturer, the courts have consistently held that he is not required to discard it if he describes his product in such a way as will make certain that the public will not confuse it with the product of the original user of the name. As to this contention of defendant two matters must be kept in mind. The name must be used in a geographical or descriptive sense and not a mere trade name, and the use must be without unfair competition to avoid injunctive relief. The defendant was not offering for sale beer made in Budweis, nor could it have used "Budweiser" in the way of description. The term would mean nothing to the public unless considered as describing Anheuser-Busch beer. In seeking registration of a "Budweiser" trade mark defendant sought to apply the mark to ale and porter. This indicated that defendant was not using it to describe a type of beer.

■ The plaintiff has offered a very considerable amount of testimony to establish unfair competition by defendant. Some of it may be subject to the severe criticism visited upon it by defendant's counsel, but not all of it. Perforce the Court must start with the fact that defendant knew that plaintiff's beer had been extensively advertised and widely distributed for many years under a trade name. That name, except as known from the advertisement and distribution of plaintiff's beer, was practically unknown in this country. When defendant used the trade name of another long in use as a part of its own name to designate its product, what was the natural result when retailers should handle defendant's beer? Some of them would deliver to the customer, on demand for "Budweiser" or "Bud" (it's abbreviated common name), defendants "DuBois Budweiser". Was it not Budweiser? Credible witnesses have testified to such substitutions by retailer and wholesalers. And agents of defendant, seeking retailers as customers, were likely to, and in some cases have, suggested such substitutions as possible to their proposed customers. Such substitutions may not be prevented when draught beer was ordered at a bar, and confusion as to whose product it is may exist in the mind of a consumer even when defendant's "Budweiser" is offered to him in one of defendant's bottles upon an order for "Budweiser" or "Bud".

■ In the instant case the Court has had little difficulty in determining that in 1905, when defendant adopted its trade name, the name "Budweiser" identified beer so marked to the general public as the product of Anheuser-Busch. The main doubt has arisen over defendant's allegations of laches and estoppel.

In 1908 plaintiff brought substantially the same action against defendant as in the present suit. In 1909, with the consent of

defendant, it discontinued the suit without prejudice and filed this action in 1940.

Plaintiff excused the delay immediately following the discontinuance of the first action by reason of the illness of Adolphus Busch, its then president. Mr. Busch was ill when the original suit was begun. Until his death in 1913 he was not able to walk, but his mental faculties were unimpaired and he regularly attended to his business by means of a wheel-chair. After discontinuance of the suit he visited Germany on business trips, and undoubtedly could have testified in Pittsburgh or executed a deposition almost to the time of his death. As to the time between 1910 and 1919 plaintiff points to the approach of the Prohibition Amendment as a reason for its failure to proceed. Undoubtedly it had reason to fear prohibition, but it was not immediately impending in 1910, and between that year and the adoption of the Amendment plaintiff was engaged in trade mark proceedings in the Patent Office. In the prohibition era the defendant continued to sell near beer and malt syrup under the "DuBois Budweiser" trade name. After the manufacture of beer became legal the plaintiff moved slowly in instituting the present action, suit not having been begun until 1940. Notice of intention to begin it, however, was given several years prior to suit.

While the delay in bringing the action has been great, it must not be forgotten that defendant faced the fact that suit might again be brought when it consented to the withdrawal of the 1909 action, and that since the withdrawal it had notice that plaintiff was not consenting to its use of the trade name. In 1919 it objected to defendant's application for a paper trade mark for "Budweiser" with other words accompanying it. But even without that notice injunctive relief to plaintiff is required by the finding of unfair competition on the part of defendant. In the face of such a finding, delay as in suit does not prevent injunctive relief. Menendez v. Holt, 128 U. S. 514, 9 S.Ct. 143, 32 L.Ed. 526; Juan F. Portuondo Cigar Mfg. Co. v. Vicente Portuondo Cigar Mfg. Co. 222 Pa. 116, 70 A. 968; Grove Laboratories Inc. v. Brewer & Co., 1 Cir., 103 P.2d 175. It may cause an order for an accounting to be denied.

Plaintiff is entitled to a decree by which the defendant will be enjoined from the use of the term "Budweiser", or "Bud", to describe beer manufactured by it, and will otherwise be protected in its use of its trade name. On account of the delay of plaintiff an accounting will not be ordered.

Let a decree in accordance with the foregoing opinion be presented, after due notice to counsel for defendant.

### Findings of Fact

1. Anheuser-Busch, Incorporated, plaintiff, is a corporation organized and existing under the laws of the State of Missouri, with its principal office, place of business and brewery in the City of St. Louis, Missouri, and is engaged in the manufacture and sale, inter alia, of beer, malt syrup and yeast. It was incorporated in 1925, and is the successor by assignment, of the business, properties and trade-marks of a corporation by the same name which was incorporated in 1875 under the name of E. Anheuser Company's Brewing Association; the name of the latter corporation was changed to Anheuser-Busch Brewing Association in 1879, and again changed to Anheuser-Busch, Incorporated, in 1919.

2. DuBois Brewing Company, defendant, is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with its principal office, place of business and brewery at DuBois, Pennsylvania. It was incorporated in 1895, and is engaged in the business of brewing and selling beer.

3. The matter in controversy in this action, exclusive of interest and costs, exceeds the sum of $3,000.

4. About March 1, 1876, E. Anheuser Company's Brewing Association began to manufacture for one Carl Conrad, trading as C. Conrad & Co., a wine and liquor merchant in the City of St. Louis, Missouri, and a dealer in beers imported from Europe, a beer made according to the "Budweiser process." The beer so manufactured for Conrad was sold by him under the name of "CCC Budweiser Beer." Some time in the year 1877, Conrad commenced to use on bottles containing the beer so brewed for him a label, a copy whereof is shown in Defendant's Exh. 7 M's, whereon appeared,

inter alia, the following: "Budweiser Lager Bier. C. Conrad & Co. Mainz, Geisenheim a/R & St. Louis, Mo. We guarantee that this Beer is brewed especially for our own trade according to the Budweiser Process of the best Saazer Hope & Bohemian Barley and warranted to keep in any Climate".

5. The beer so manufactured by E. Anheuser Company's Brewing Association was sold by Carl Conrad under the name "Budweiser Lager Bier" from 1876 until 1883, during which period neither E. Anheuser Company's Brewing Association nor its successor, Anheuser-Busch Brewing Association, sold any of said beer.

6. The name "Budweiser" had been known to Carl Conrad and to Adolphus Busch, then President of E. Anheuser Company's Brewing Association, from a time long before March 1, 1876, as beer made by the brewers in the City of Budweis in Bohemia. Adolphus Busch had been familiar with the European Budweiser beer from at least as early as 1868 or 1869 and from a time prior to March 1, 1876, had been familiar with the process used in making beer at Budweis. Conrad, who had travelled in Europe prior to 1876, had learned there that the European "Budweiser" beer was considered by Europeans to be one of the finest beers made there.

7. It was the purpose of Carl Conrad and E. Anheuser Company's Brewing Association that the beer brewed by the Association for Conrad should be similar in quality, color, flavor and taste to the "Budweiser" beer then being made in Bohemia.

8. In or about the year 1883 plaintiff's predecessor acquired the right to use "Budweiser" from said Conrad. In 1891 a confirmatory assignment was executed by Conrad and his wife which transferred to plaintiff's predecessor, Anheuser-Busch Brewing Association, "all the right, title and interest which we or either of us may have acquired or in any way have or possess jointly or severally in the manufacture, production and sale of Budweiser Lager Beer, and in the good will of the business of C. Conrad & Co. in Lager beer, as well as the sole right to the name, trade marks and labels used in connection therewith",

together with certain federal trade-mark regulations.

9. Between 1891 and 1898 plaintiff's predecessor sold 785,970 barrels of "Budweiser" beer.

10. From 1898 the wide advertising and sale of "Budweiser" beer by plaintiff's predecessor throughout the United States continued to grow; and the depositions and testimony of witnesses at the trial show that during at least fifteen years prior to 1905 plaintiff's predecessor made extensive sales of "Budweiser" beer in Pennsylvania, Ohio, West Virginia, Maryland, New York, New Jersey and New England; prior to 1905, the money invested by plaintiff's predecessor in advertising was spent in the main on "Budweiser"; and the advertising by plaintiff's predecessor of its beer under the mark "Budweiser" was circulated to millions of people each year.

11. Following the extensive growth of the business of plaintiff's predecessor and the establishment of a good will of great value in the designation "Budweiser" for beer, there appeared in the course of years a number of imitators who sought to take advantage of the celebrity of plaintiff's trade-mark and of the valuable good will associated with plaintiff's mark by using the word "Budweiser" on beer not brewed by plaintiff's predecessor, but plaintiff's predecessor objected promptly to all such uses, and prior to 1905 had succeeded in obtaining the discontinuance of all such infringements except in the instance of Prospect Brewing Co. of Philadelphia, which sold beer not brewed by plaintiff's predecessor marked "Budweis" to which infringement of its trade-mark "Budweiser" plaintiff's predecessor duly objected and which was discontinued at the outset of Prohibition when the Prospect brewery was padlocked by Federal authorities.

12. During this period certain American importers who imported beer from the City of Budweis labelled such beer as "Budweiser" in a manner to which plaintiff's predecessor objected as infringing its trademark rights, but by an agreement with plaintiff's predecessor the breweries of Budweis in 1911 conceded the priority of plaintiff's predecessor's use of the word

"Budweiser" as a trade-mark applied to beer in the United States and thus conceded the trade-mark rights of plaintiff's predecessors in the word "Budweiser" and agreed to use the word "Budweiser" only to describe the geographical origin of this beer.

13. Long prior to June, 1905, the word "Budweiser" had acquired a secondary meaning indicating the output of plaintiff's predecessor exclusively and the trade and public generally had come to use the word "Budweiser" and its abbreviation "Bud" to designate the beer of plaintiff's predecessor and of no one else.

14. Continuously since prior to 1905, except while the national Prohibition law was in effect, plaintiff and its predecessor have manufactured and sold beer extensively throughout the United States under the "Budweiser" mark; and during Prohibition, from 1920 to 1933, sales of "Budweiser" near beer made by plaintiff and its predecessors exceeded 23,000,000 cases; during Prohibition, between 1921 and 1925, plaintiff's predecessor also sold over 21,000,000 pounds of bulk and canned malt syrup under the "Budweiser" mark; and between 1925 and 1932 plaintiff sold over 37,000,000 pounds of "Budweiser" malt syrup in bulk and over 4,000,000 cartons of canned "Budweiser" malt syrup, such cartons containing 12 cans of 2½ or 3 pounds per can; in addition, plaintiff's sales of yeast under the "Budweiser" mark from 1929 to 1946 exceeded 496,000,000 pounds.

15. From Repeal in 1933 through 1946 the barrel equivalent of plaintiff's beer sold in bottles, on draught and in cans under the "Budweiser" mark amounted to 30,336,506¼ barrels.

16. During Prohibition between 1918 and 1932 plaintiff and its predecessor spent over $6,000,000 advertising "Budweiser" malt syrup and "Budweiser" yeast; during the same period over $3,500,000 was spent by plaintiff and its predecessor in advertising near beer, and the greater portion of that amount was spent on advertising "Budweiser" near beer; during the period since Repeal, from 1933 through 1946, plaintiff has spent over $25,000,000 advertising its beer, and the majority of that amount has been spent on advertising of "Budweiser" beer. During the same period plaintiff spent over $1,000,000 advertising "Budweiser" malt syrup and "Budweiser" yeast.

17. Such advertising by plaintiff and its predecessor of its products sold under the mark "Budweiser" from 1918 to date, as prior thereto, has been by means of newspapers, magazines, trade publications, billboards, outdoor signs, point-of-purchase advertising, and such media as the eight horse hitches.

18. With the founding of the Czechoslovak Republic at the conclusion of World War I, the name of the City of Budweis was changed to Budejovice.

19. For a short time after Repeal, during the years of 1934 and 1935, imported beer from Budejovice was sold in small quantities in this country along the Eastern seaboard under the name "Nazdar".

20. Subsequently, the importers changed the label to "Imported Budweiser" and small amounts of imported beer so labeled, which plaintiff contended violated the 1911 contracts, were sold in this country during the years 1936-1938.

21. After protest by plaintiff in 1938, new agreements were executed in 1939 between plaintiff and the breweries at Budejovice by which the breweries at Budejovice discontinued all use of "Budweiser," "Budweis," "Bud" or any confusingly similar term.

22. The word "Budweiser" is not now and never has been used as the name of a type of beer.

23. Defendant began to use the word "Budweiser" in the phrase "DuBois Budweiser" in June, 1905.

24. At the time defendant began to use the word "Budweiser" it knew that the word "Budweiser" was the name of a brand of beer brewed by Anheuser-Busch.

25. In October, 1905, counsel for plaintiff's predecessor demanded that defendant discontinue use of the word "Budweiser". A number of additional letters between counsel for plaintiff's predecessor and defendant's counsel were exchanged.

26. Following the demand of plaintiff's predecessor that defendant discontinue the use of the word "Budweiser," on March 1, 1906, Frank Hahne, defendant's then president, swore that his corporation was the owner of the trade-mark which defendant then sought to register in the United States Patent Office consisting of the word "Budweiser" together with certain other words and figures, and that the class of merchandise to which said trade-mark was appropriated and upon which defendant used said trade-mark was "Lager Beer, Ale and Porter."

27. On November 8, 1906, plaintiff's predecessor filed opposition to defendant's application to register its trade-mark and defendant's president verified the answer to said opposition on December 14, 1906 in which answer defendant alleged, among other things, "that its trade-mark consists of the word 'Budweiser' in connection with the monogram 'D B Co', the name 'DuBois Brewing Co.'"

28. On September 2, 1908, plaintiff's predecessor filed suit against defendant in the United States Circuit Court for the Western District of Pennsylvania for an injunction against the use of the word "Budweiser".

29. The 1908 suit was discontinued on consent of defendant's counsel on August 3, 1909.

30. During the period 1908 through 1918 twenty-five states went dry by adopting state-wide statutes or constitutional prohibition; in the early years only a few states went dry at a time, but as the prohibition movement gathered momentum increasing numbers of states went dry each year, and in 1914, 1915 and 1917 four, six and seven states went dry respectively.

31. Defendant's sales prior to Prohibition under the label "DuBois Budweiser" were small and limited principally to the territory in Northwestern Pennsylvania and Buffalo, New York.

32. Prior to Prohibition, defendant spent very little money on advertising.

33. During Prohibition, defendant brewed a small amount of near-beer which it sold to a separate company called "DuBois Products & Cold Storage Company", which company in turn resold some of said near-beer under the label "DuBois Budweiser" and which company also sold malt syrup under the label "DuBois Budweiser", which malt syrup it purchased from Schlitz Brewing Co. and others.

34. Throughout the period of the existence of defendant's brewery it has remained and still is a small brewery.

35. The barrel capacity of defendant's brewery has not been changed since prior to 1909. It has had the same size kettle continuously since that date. Prior to the present suit, the amount of beer labeled "DuBois Budweiser" brewed was only a comparatively small percentage of the total beer brewed. The bottled beer labeled "DuBois Budweiser" ran from less than 8% in 1933 to less than 12% in 1939, while the draught beer sold as "DuBois Budweiser" ran from less than 8% in 1933 to less than 30% in 1939. In 1939 the total sales of defendant's beer amounted to slightly more than 37,000 barrels, which is some 7,000 barrels less than the number of barrels sold by defendant in the year 1909.

36. After the repeal of Prohibition, defendant again began to sell its beer under the label "DuBois Budweiser" and began to expand its business into cities in which it had not sold its beer so labeled prior to Prohibition.

37. Defendant usually invoiced its beer labeled "DuBois Budweiser" as "Budweiser" or "Bud".

38. In writing letters to defendant's salesmen, defendant's sales manager referred to its beer labeled "DuBois Budweiser" as "Budweiser".

39. Defendant's distributors, in many instances, invoiced defendant's beer labeled "DuBois Budweiser" as "Budweiser" or "Bud".

40. Many of defendant's wholesale distributors and retail dealers sold defendant's beer labeled "DuBois Budweiser" on calls for "Budweiser" or "Bud" without explanation.

41. Members of the public, who for many years had believed the word "Budweiser" was a brand name for a beer put

out by Anheuser-Busch, ordered "Budweiser" beer on draught and received beer from a tap on the handle of which were the words "DuBois Budweiser", which beer they believed to be plaintiff's.

42. Members of the public, when receiving defendant's beer "DuBois Budweiser" on calls for "Budweiser" draught beer were not likely to notice that the beer was taken from a tap labeled "DuBois Budweiser" or if they did notice such fact, nevertheless were likely to believe that the beer was plaintiff's beer.

43. In 1919 defendant was required to show cause why Opposition No. 322 should not be sustained. This was the opposition filed by plaintiff's predecessor to defendant's "application for registration of a trade-mark for lager beer, ale and porter filed March 19, 1906" consisting in part of the word "Budweiser". Defendant thereupon appointed new counsel to prosecute and defend said opposition. Thereafter defendant's attorneys filed its argument and after due consideration the Examiner sustained the opposition of plaintiff's predecessor and denied the defendant's application to register its claimed trade-mark which included the word "Budweiser".

44. During the summer of 1910, while Messrs. Adolphus Busch, C. C. Conrad and Rudolph Knippenberg were in Europe, a settlement of the proceeding in the Patent Office was negotiated with Die Budweiser Brauberechtigten Burgerliches Brauhaus, and two written agreements were signed at Prague on September 28, 1910. Neither of these agreements was offered in evidence at the trial of this case, the plaintiff explaining that the agreements had been lost. However, a later agreement made between Anheuser-Busch Brewing Association and the Burgerliches Brauhaus dated September 4, 1911 (Plaintiff's Exh. 101-F), recites that it is executed and delivered "pursuant to and in substitution for the aforesaid agreements of 1910."

45. By the agreement of September 4, 1911, it was recited that Anheuser-Busch Brewing Association had paid to Burgerliches Brauhaus the sum of 82,500 Austrian kronen; in exchange therefor it was provided that Burgerliches Brauhaus agreed to and did withdraw its objections to the use by Anheuser-Busch Brewing Association of the name "Budweiser" as a tradename or trade-mark on its beer, except in Europe, it being made clear that this license was not intended to permit the sale of the American-made beer as "Budweiser" in any European country, and that the right already possessed and enjoyed by Burgerliches Brauhaus to sell its "Budweiser" beer in the United States should continue. The agreement provided finally for the execution of the short document which had been filed in the Patent Office some months before on April 27, 1911, by which the application of Burgerliches Brauhaus to cancel Anheuser-Busch Brewing Association's trade-mark registration of July 23, 1907, was withdrawn.

46. On August 19, 1911, Anheuser-Busch Brewing Association entered into a similar written agreement, at Budweis, with the owners of another brewery at that place,—the "Cesky Akciovy Pivovar v. Ceske Budejovicich" (Plaintiff's Exh. 101–G). By this agreement the Cesky Akciovy Pivovar v. Ceske Budejovicich conceded that Anheuser-Busch Brewing Association might use the word "Budweiser" on beer sold by the latter in any part of the world outside of Europe, so long as it did not use the word "Original" in connection therewith; it also agreed to raise no objection to the use by Anheuser-Busch Brewing Association of its trade-mark of July 23, 1907. Like the Burgerliches Brauhaus, Cesky Akciovy Pivovar reserved to itself the concurrent right to use the word "Budweiser" on its product in the United States and elsewhere throughout the world.

47. As the agreements of September 4, 1911, and August 19, 1911, contemplated, the Burgerliches Brauhaus and Cesky Akciovy Pivovar sold their products as "Budweiser" beer, in the United States, from 1911 until the early part of 1939, except for the period of National Prohibition in the United States.

48. Under the agreements of 1910 and 1911 with the brewers at Budweis, the latter were free to sell their products as "Budweiser" in the United States; and after

the repeal of National Prohibition imported "Budweiser Beer" again appeared in the American market. The right of the Cesky Akciovy Pivovar to sell its beer as "Budweiser" in the United States was again recognized and conceded by the plaintiff in 1934, and thereafter and on August 10, 1937, the Cesky Akciovy Pivovar obtained registration in the United States Patent Office of a beer bottle label, which had been submitted to and approved by the plaintiff's executive Vice President, R. A. Huber, in 1934, and on which the principal inscription was the words "Imported Original Bohemian Budweiser Beer from Budweis City."

49. On September 27, 1938, plaintiff's board of directors adopted a resolution by which its executive officers were directed to effect such adjustment and settlement and to take such legal and other action as might be necessary to eliminate the further use of the word "Budweiser" by the DuBois Brewing Company and by the two brewers at Budweis. Pursuant to this resolution, legal counsel specializing in trade-mark litigation were consulted, and before any action against Du Bois Brewing Company was taken, two representatives of the plaintiff—one of its attorneys and the assistant to its Vice-President—were sent to Budweis with instructions and authority to negotiate agreements with the Burgerliches Brauhaus and the Cesky Akciovy Pivovar under which they would agree to discontinue in the United States the use of the word "Budweiser" to describe their beer. After protracted negotiations which followed their arrival in Budweis in December, 1938, the two representatives of the plaintiff were able to negotiate the agreements desired. These agreements were reduced to writing and were made with both of the Budweis breweries and with a group of agents through whom the Cesky Akciovy Pivovar had exported its Budweiser beer to the United States, and sold it here. These agreements (Plaintiff's Exh. 101-H, 101-K and 101-M) were made between January 13, 1939, and March 7, 1939, and provided that the Budweis breweries and their agents should discontinue their use of the name "Budweiser" on their beer sold in the United States and its territories, in exchange for which the plaintiff paid them a total of $127,000.

50. Anheuser-Busch Brewing Association, after the death of Adolphus Busch in 1913, knew that defendant still continued to use the name "Du Bois Budweiser" on its beer; plaintiff itself was aware during Prohibition that the name was being used on near beer; and plaintiff learned in 1933, immediately after Repeal, that defendant had resumed the manufacture and sale of beer under the same name. Nevertheless at no time after the 1908 suit was discontinued in 1909 and until the present suit was filed in 1940 did plaintiff or its predecessor indicate to defendant that it still claimed to have sole right to use the name, or protest against defendant's using it, or suit to enjoin such use by defendant.

51. All the labels which have been used by the defendant on its "Du Bois Budweiser" at any time since 1905, as well as the labels used on the "Du Bois Budweiser Beverage" during Prohibition, are totally dissimilar from any label which has ever been used by the plaintiff on its Budweiser beer, and the shape and color of the bottles which have been used by the defendant since 1905 have been entirely different from the shapes and colors of bottles which have been used to contain the plaintiff's Budweiser beer.

### Conclusions of Law

1. Irrespective of its character as a technical trade-mark, the word "Budweiser" since long prior to 1905 has been and now is the trade-mark of the plaintiff by virtue of its association with the plaintiff and plaintiff's predecessors, and with the products of the plaintiff, whereby the word "Budweiser" has become generally known throughout the United States to the trade and consumers as meaning the product of the plaintiff and of none other.

2. The word "Budweiser" used on beer and related products is a true, arbitrary and distinctive trade-mark, and is the property of the plaintiff.

3. The word "Bud" used on beer and related products is a true, arbitrary and

distinctive trade-mark, and is the property of the plaintiff.

4. Defendant's use of the word "Budweiser" on beer and of the word "Bud" in connection therewith infringes plaintiff's trade-mark rights.

5. Defendant's use of the word "Budweiser" on beer and of "Bud" in connection therewith is without legal justification or excuse.

6. Plaintiff and its predecessors have been vigilant in protecting their rights and have not acquiesced in infringing uses of their said trade-mark by others.

7. The use of the name "Budweiser" in former years to describe the place of origin of beer imported from the city of Budejovice, when the name of that city was Budweis, does not affect plaintiff's rights in its trade-mark "Budweiser" nor give to defendant the right to appropriate plaintiff's trade-mark.

8. The delay in securing relief from defendant's infringing acts does not deprive plaintiff of its right to protection, nor does it give defendant the right to continue its unfair competition.

9. The discontinuance of the suit of plaintiff's predecessor against defendant in the United States Circuit Court for the Western District of Pennsylvania in 1909 does not estop plaintiff from obtaining relief here.

10. From the beginning, defendant's use of the words "Budweiser" and "Bud" has been with knowledge of the rights of plaintiff and of plaintiff's predecessors, and with the fraudulent purpose and intent of confusing and deceiving the public and of enabling defendant's product to be passed off as and for the product of plaintiff.

11. Defendant's fraud, in continuing its infringement of plaintiff's rights after prompt notice and the supervening fraudulent acts committed by defendant bar defendant from claiming laches.

12. Plaintiff is entitled to an injunction prohibiting defendant from using the words "Budweiser" or "Bud" or any confusingly similar word on or in connection with beer or on similar or related products.